John Henry EANS, Appellant,

v.

GROCER SUPPLY CO., INC., Appellee.

No. 17227.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Order Requiring Remittitur Feb. 15, 1979.

March 8, 1979.

Rehearing Denied April 5, 1979.

Conner & Dreyer, Jerry D. Conner, Houston, for appellant.

Talbert, Giessel & Stone, Inc., Alice M. Giessel, James Barker, Friloux, Smith & Abney, David Reed, Richard E. Stephanow, Houston, for appellee.

Before EVANS, WARREN and WALLACE, JJ.

EVANS, Justice.

This is an action for malicious prosecution growing out of charges filed against the plaintiff for misdemeanor theft.

On January 29, 1974, the plaintiff John Henry Eans was working as an employee of Grocers Supply, Co., Inc., a wholesale food supplier, at its frozen food locker. The plaintiff had another job during the daytime at the Riverside Animal Hospital, and he worked for Grocers Supply from 9:30 P.M. to about 5:30 A.M. On the night in question, he had reported to his job at Grocers Supply and parked his car in the company lot outside a security fence. After presenting his identification badge at the guard gate, he entered the plant, and walked to the locker area where he put on insulated clothing to begin his work in the frozen food locker. About 4:30 A.M. he was summoned to the shipping area by a loud speaker and was met there by his supervisor, Pinkston Bell, and other company employees. He then walked with Bell to the main guard gate where he was met by Sergeant D.D. Baker, a City of Houston police officer privately employed by Global Security, Inc. to advise Grocers Supply on security matters, and by Ronald Kruise, a former police officer who was employed by Grocers Supply as its security supervisor. The plaintiff proceeded with this group to the parking lot where, upon opening the trunk of his vehicle, a package of luncheon meat and a package of frozen strawberries were found. Sergeant Baker placed the plaintiff under arrest and caused him to be jailed and subsequently charged with misdemeanor theft. The original theft action was later dismissed upon the failure of the security supervisor Kruise to appear as the complaining witness; however, the theft charge was subsequently reinstituted against the plaintiff after Grocers Supply wrote a letter to the prosecuting attorney explaining why Kruise had failed to appear and testify at the first trial. The second action also terminated in a dismissal, and the plaintiff then brought this suit for malicious prosecution against Grocers Supply, Global Security, Inc., and D.D. Baker.

The instant cause was tried to a jury, and, at the close of the evidence, the court granted a motion for an instructed verdict filed by the defendants, D.D. Baker and Global Security, Inc. It overruled a similar motion filed by Grocers Supply and the case was then submitted to the jury on special issues. The jury found: (1) that the plaintiff was innocent of the charges filed against him; (2) that Grocers Supply had instituted the criminal prosecution against him; (3) that Grocers Supply had acted without probable cause, and (4) with malice in instituting the criminal proceedings; (5) that the plaintiff had sustained damage as a result of the prosecution; (6) that $100,-000.00 would fairly and reasonably compensate him for such damage; and (7) that he should receive an additional sum of $5,000.00 as exemplary damages. The trial court overruled the plaintiff's motion to enter judgment in his favor on the jury's verdict and, instead, it entered a judgment non obstante veredicto in favor of Grocers Supply. This is an appeal from that judgment.

In four points of error the plaintiff contends that the trial court erred in disregarding the jury's answer to special issue no. 3 and in finding, as a matter of law, that there was probable cause for the institution of criminal proceedings. In reviewing these points all evidence must be considered in the light most favorable to the plaintiff against whom the judgment n. o. v. was rendered, and every reasonable intendment deductible from the evidence must be indulged in his favor. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex. 1974). Thus, this court cannot sustain the judgment n. o. v. unless the record reflects that there was no evidence upon which the jury could have based its finding or unless the evidence shows, as a matter of law, that the defendant, Grocers Supply, was entitled to judgment in its favor. *Monesson v. Champion Intern. Corp.,* 546 S.W.2d 631, 636 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). At the time of the occurrence in question, the plaintiff was an unmarried black male, 37 years of age, residing with his sister in the City of Houston. He had worked at two jobs some 20 years and had worked for Grocers Supply some seven years. At the time of trial he was employed by Cameron Iron Works in its aviation department at Hobby Airport from 8:00 A.M. to 5:00 P.M., and in the evening he worked as a janitor for ITT on Silsbee Road. The plaintiff had never before been arrested or in jail. He had never been accused of a crime except for one occasion when Clarence Chadwick, the personnel director for Grocers Supply, had accused him of selling merchandise on the street. However, after the accusation was made, the plaintiff never heard anything further about the matter.

Upon completing his work at his daytime job on the evening in question, the plaintiff drove to Grocers Supply, parked his car on the company parking lot, and after presenting his employee identification badge to the guard at the entrance gate, he proceeded to the locker area where he donned insulated clothing and boots to work in the frozen food locker. His job that night was to keep the place clean. The plaintiff was afforded a 30 minute lunch break between the hour of 11:30 P.M. and midnight, and ordinarily he would either eat or play dominoes during his lunch break; however, on the night in question, he did not eat lunch, and since there was no domino game he slept during his lunch break. He testified that he did not leave his work area during the time he was at work and that his fellow employees, his supervisor and the gate guard would have known if he had left his authorized work area.

The plaintiff further testified that when he left his automobile in the parking lot it was locked and he put his keys in his pocket. His keys were needed to open his clothes locker, and he kept his car key on a key chain in his street clothes pants pocket over which he wore insulated clothing. When he arrived at the guard shack, Sergeant Baker told him that he, Baker, had received a telephone call from "someone" who advised him that the plaintiff had gone to his car at the lunch break and had put something into it. Baker told the plaintiff that he had to search his car and marched him to his automobile. The plaintiff asked Baker to check around to determine whether he had left his authorized work area, but Baker refused and "actually laughed" at him. Baker ordered the plaintiff to open the car, and the plaintiff first opened the driver's side. Baker did not look in the car. The plaintiff then was directed to open his trunk, and when the trunk was unlocked and opened, several boxes of frozen food were revealed. The plaintiff testified that when he opened his car door nobody bothered to look into the car; they "just stood there looking around laughing". He said that when he opened the trunk of his car and his trunk "clicked," Baker said "You are under arrest". He testified that he made no objection to the opening of his automobile since he had "nothing to hide" and that despite his request to Baker that an inquiry be made of his fellow employees to determine whether he had left the frozen food area, Baker refused to do so; Baker only laughed at this request. The plaintiff was then taken back inside for a brief

meeting with his personnel director, and afterward was jailed and charged with misdemeanor theft. He spent most of the following day in jail and incurred bail bond and attorney's fees. After the first charges were dismissed, the charges were refiled and an additional arrest warrant was issued and mailed to him. He then incurred additional bond and attorney's fees and was compelled to attend a criminal court hearing once, sometimes twice, per month for a year before the proceedings were terminated in his favor.

A party who causes a criminal complaint to be filed against another person does so on probable cause where, in good faith, he makes a full and fair disclosure of the facts and circumstances known to him and where, on the basis of such disclosure, a criminal complaint is thereafter filed. *Sebastian v. Cheney*, 24 S.W. 970 (Tex.Civ. App.) rev'd on other grounds 86 Tex. 497, 25 S.W. 691 (1894). However, unless the party causing the complaint to be filed acts in good faith in disclosing to the prosecuting attorney all material facts known to him, probable cause does not exist. *J.C. Penney Co. v. Gilford*, 422 S.W.2d 25, 30. (Tex.Civ. App.—Houston [1st] 1967 writ ref'd n. r. e.) *Ada Oil Company v. Dillaberry*, 440 S.W.2d 902 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd). The reporting party is required to bring to the attention of the prosecuting attorney all material facts known to him relating to the matter, including facts from which the district attorney by making further investigation might determine that the accused was not guilty of any offense. *J.C. Penney Co. v. Gilford*, supra.

There is evidence in the record from which the jury could reasonably have concluded that a good faith disclosure of all material facts was not made to the prosecuting attorney when the plaintiff was jailed and charges were instituted against him. The jury could have decided from the testimony that Sergeant Baker had arbitrarily refused to inquire of the gate guard or the plaintiff's fellow employees with respect to the plaintiff's whereabouts during the evening in question and that he had failed to disclose to the District Attorney's office the possibility that such information might exculpate the plaintiff of the offense charged. The record reflects that the plaintiff's story could have been easily verified had Sergeant Baker chosen to disclose this information, and that, instead, he chose to reveal only that information which was incriminating to the plaintiff.

The jury could also have inferred from the evidence that the frozen food had been intentionally placed in the plaintiff's trunk by persons acting on behalf of Grocers Supply. There was evidence that Grocers Supply had been long plagued with theft of its merchandise from external sources and that it suspected thefts from internal sources. Grocers Supply had employed Baker to advise it on security matters and had hired Kruise, a former police officer, as its salaried employee to act as its security supervisor. Kruise's duties were to investigate and then assist in the prosecution of thefts, and Baker's duties were to advise Grocers Supply on security matters and to assist it in the filing of criminal charges. Grocers Supply had spent large sums of money to stop the thefts, but it had never succeeded in doing so. Kruise testified that at the time of the instant occurrence, Grocers Supply was leaning toward an attitude of relentless prosecution in cases of theft. Sergeant Baker testified that he had received a telephone call from "someone" advising that the plaintiff had placed something in his car during the lunch break; however, at the time of trial, Baker testified that he could not remember the name of this informant. The plaintiff testified that after the packages of frozen food were discovered in his trunk, Kruise indicated by his statement he had "something to do with it", and Kruise admitted upon cross-examination that during a trial recess he had stated "in a joking manner" that he had been involved in planting the contraband packages in the plaintiff's trunk. On the basis of the circumstantial evidence contained in the record, the jury could have reached the conclusion that the representatives of Grocers

Supply had conspired to place blame on the plaintiff for the past thefts of merchandise from the company premises and that for such reason there was no probable cause for the institution of any criminal action against the plaintiff.

The record contains evidence which is legally sufficient to support the jury's finding that Grocers Supply acted without probable cause in initiating the criminal action against the plaintiff and the plaintiff's first three points of error will be sustained. The jury's finding in this respect is not against the great weight and preponderance, of the evidence, and Grocers Supply's sixth cross point of error is overruled.

■ By cross point the defendant contends that there is no evidence to support the jury's answer to special issue no. 2 and that such finding is against the great weight of the evidence because Grocers Supply did not, itself, institute criminal action against the plaintiff, such charges having been instituted by the City of Houston and filed by the office of the District Attorney. The criminal proceedings were first instituted against the plaintiff on the basis of an offense report filed by D.D. Baker, then a member of the Houston Police Department, but also privately employed as a security consultant for Grocers Supply. Under the evidence presented, the jury was justified in concluding that criminal charges were instituted on behalf of Grocers Supply. Furthermore, the jury could reasonably have concluded from the evidence that after the dismissal of the initial criminal proceedings brought against the plaintiff, the criminal charges were refiled on the basis of the action of Grocers Supply indicating its continued interest in the prosecution of the matter. The record contains evidence which is legally sufficient to support the jury's finding that Grocers Supply was responsible for the initiation of criminal charges against the plaintiff, and such finding is not against the great weight and preponderance of the evidence.

■ Grocers Supply further contends by cross point that the evidence is legally insufficient to support the jury's finding to special issue no. 4 that Grocers Supply acted with malice. Under the evidence contained in the record, the jury could have inferred malice from the manner in which the employees of Grocers Supply treated the plaintiff at the time of his arrest and thereafter. For example, there was evidence showing that even though Grocers Supply knew the home address of the plaintiff, it sent a telegram to him at his work address, notifying him that he had been fired for taking property from company premises without permission. Under the circumstances presented by the record, the jury was authorized to infer malice from the want of probable cause. *Biering v. First Nat. Bank,* 69 Tex. 599, 7 S.W. 90 (1888). These cross points are overruled.

In its remaining cross points Grocers Supply complains that the jury's award of $100,000.00 as actual damages and $5,000.00 as exemplary damages are against the great weight and preponderance of the evidence and are so grossly excessive as to indicate bias and prejudice.

The Restatement of Torts, Second, Section 670, at page 443, states:

§ 670. General Damages

When the essential elements of a cause of action for malicious prosecution have been established, the plaintiff is entitled to recover damages for

(a) the harm to his reputation resulting from the accusation brought against him, and

(b) the emotional distress resulting from the bringing of the proceedings.

Section 671, entitled Special Damages states:

§ 671. Special Damages

When the essential elements of a cause of action as for malicious prosecution have been established, the plaintiff is entitled to recover for

(a) the harm legally caused by any arrest or imprisonment suffered by him during the course of the proceedings, and

(b) the expense that he has reasonably incurred defending himself from the accusation, and

(c) any specific pecuniary loss legally caused by the proceedings.

■ In considering the matter of damages the jury was entitled to consider any physical injury suffered by the plaintiff, any injury to his feelings and reputation, any injury to his property, and any loss of his time and expense. *Equitable Life Assurance Society of United States v. Lester,* 110 S.W. 499 (Tex.Civ.App., 1908, no writ).

The plaintiff did not testify that he had suffered any physical injury to property as a result of charges filed against him. He made no claim for lost wages, and he did not contend that he had suffered any loss with respect to his daytime job at Riverside Animal Hospital. After he had been dismissed from Grocers Supply, he went to work for ITT, and there is no indication that the charges filed against him had any adverse effect on his work for that employer. There was testimony that he had been required to pay legal and bond fees totaling about $1,550.00 as a result of the charges filed against him.

The trial court instructed the jury that it might take into account in connection with the damage issues the elements of mental anguish, embarrassment and humiliation and any necessary bond fees and attorney's fees in defense of the criminal prosecution.

■ In assessing actual damages the jury was entitled to consider the costs and attorneys fees which the plaintiff was compelled to incur in defense of the criminal action. *Dallas Joint Stock Land Bank of Dallas v. Britton,* 114 S.W.2d 907 (Tex.Civ. App.—Waco 1938, reversed on other grounds 134 Tex. 529, 135 S.W.2d 981, 1940). The other elements of damage, mental anguish, embarrassment and humiliation, were matters peculiarly within the province of the jury's determination and much discretion must be allowed the jury in fixing the amount of its award. *Green v. Meadows,* 527 S.W.2d 496 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.)

The plaintiff testified that he "felt bad" whenever he had to make a court appearance. His sister testified that he had never been in trouble before and that she had seen some changes in him since his arrest. He is withdrawn, goes through strains of depression and is restless. He could not sleep when he had to go to court. He did not socialize like he used to, and he expressed present feelings of anxiety about being branded a criminal.

■ The evidence supports the jury's award of both actual and exemplary damages, and the jury's findings in such respect are not against the great weight and preponderance of the evidence. The question remaining is whether the jury's award is excessive.

■ In the absence of circumstances tending to show that the jury's award was the result of passion, prejudice, or other improper motive, or that the amount fixed was not the result of a deliberate and conscious conviction in the minds of the jury and court, or that such award was so excessive as to shock the court's sense of justice, the jury's verdict should not be disturbed. *Green v. Rudenske,* 320 S.W.2d 228 (Tex. Civ.App.—San Antonio 1959, no writ); *Clark v. Smith,* 494 S.W.2d 192 (Tex.Civ. App.—Dallas 1973, writ ref'd n. r. e.). It is not the prerogative of the appellate court to substitute its judgment for that of the jury, notwithstanding that it might have awarded a lesser sum as a factfinder, and every intendment must be given to the evidence supporting the jury's verdict. *Hammond v. Stricklen,* 498 S.W.2d 356 (Tex.Civ.App.— Tyler 1973, writ ref'd n. r. e.); *Dallas Transit Co. v. Newman,* 380 S.W.2d 818, 825 (Tex. Civ.App.—Dallas 1964, writ dism'd). In considering whether the amount of damage found by the jury is excessive, the court is required to exercise its sound judicial judgment and discretion in the ascertainment of the amount that would be reasonable compensation for the injury sustained and to treat the balance as excess. *Green v. Meadows,* supra, at page 498.

It is this court's determination that the jury's award of actual damage is excessive in the amount of $30,000.00, and Grocers Supply's eleventh cross-point is therefore, sustained. Grocers Supply's remaining

cross-points relating to the damage issue are denied.

The error of the trial court in entering a judgment non obstante veredicto in favor of the defendant, Grocers Supply Co., Inc., requires that the judgment of the court below be reversed, and upon such reversal this court is empowered to render a judgment on the jury's verdict as the trial court should have rendered. Rule 434, Tex.R.Civ. Pro. Since this court has determined that the jury's award is excessive in the amount of $30,000.00, it is ordered that if the plaintiff files a release of said award within ten days from the date hereof, judgment is rendered in favor of the plaintiff against said defendant, Grocers Supply Co., Inc., for the sum of $70,000.00, as actual damages and $5,000.00, as exemplary damages with interest thereon at the legal rate from and after the date of the trial court's initial judgment in this cause; otherwise the judgment of the trial court is reversed and the cause remanded for a new trial.

ORDER AFTER REMITTITUR

In this court's opinion and judgment entered February 15, 1979, a remittitur in the amount of $30,000 was suggested and such remittitur having been timely filed in accordance with said opinion and judgment, the trial court's judgment rendered in favor of the defendant, Grocers Supply Co., Inc., is reversed and judgment is rendered that the Plaintiff, recover from the Defendant, Grocer Supply Co., Inc., the sum of $70,000, as actual damages, and the sum of $5,000, as exemplary damages, and that said judgment in the total sum of $75,000 shall bear interest at the rate of 9% per annum from and after March 31, 1978, the date of entry of the trial court's judgment.