**DIAMOND SHAMROCK CORPORA-
TION and Industrial Lubricants,
Inc., Appellants,**

v.

**Reynaldo E. ORTIZ, Appellee.**

**No. 13–87–328–CV.**

Court of Appeals of Texas,
Corpus Christi.

June 16, 1988.

Rehearing Denied June 30, 1988.

Charles Sweetman, Dana Allison Lester, Law Offices of Allison, Chavez and Sweetman, Brownsville, for appellants.

James A. Herrmann, Harlingen, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Diamond Shamrock Corporation [Shamrock] and Industrial Lubricants, Inc., a subsidiary thereof, appeal from a judgment rendered against them for $50,000, for the malicious prosecution of Reynaldo Ortiz. Appellants bring five no evidence points of error, a point on pre-judgment interest, and a point on excessive damages. We reverse the judgment of the trial court.

In 1981, appellee was hired by Richard Johnson, a district manager for Shamrock, to work in a La Feria warehouse for Industrial Lubricants, Inc. Appellee first worked installing racks and cleaning the warehouse, then worked as a truck driver delivering oil and lubricants stored there, and finally moved back in the warehouse preparing orders for shipment. In 1983, appellee, Alex Jimenez and Chuck Danek worked together preparing orders for shipment under the supervision of Dan Savarino. Savarino worked in an office adjoining

the bay area, along with his secretaries, Rosi Trevino and Estella Elizonda. Johnson worked in Corpus Christi and visited the La Feria warehouse once a month to supervise an inventory of the stock. Appellee's cousin, Arnold Ortiz, worked as a truck driver for the warehouse.

It was Savarino's policy to sell damaged warehouse merchandise to the employees at a discount. Appellee purchased merchandise by check every two or three weeks and either took it home in his car or let his cousin Arnold transport it for him on Arnold's truck.

Sometime in 1983, Trevino found an invoice in her files that had originally indicated the sale of an oil drum, but had been altered to reflect the sale of a less expensive item. She called Johnson, who came down to investigate the discrepancy. Savarino, who had actually been responsible for altering the invoice, managed to convince Johnson that Elizonda, who had recently been terminated, was responsible, and the investigation was temporarily suspended. Savarino, however, resigned from the company. Johnson then instructed Trevino to look for other altered invoices. When Trevino discovered ten such invoices, reflecting close to $1,000 unaccounted for, Johnson resumed his investigation of the La Feria warehouse.

This time Johnson and Joseph O'Connell, an investigator employed by Shamrock, visited the La Feria warehouse on a Tuesday and began to question the employees one by one in the office. When appellee was questioned, Johnson got angry, accused him of stealing and cussed him. Johnson and O'Connell questioned several other employees who gave them statements implicating the appellee and Jiminez in theft. Arnold Ortiz gave a statement that:

I know that Ray Ortiz and Alex Jiminez put extra merchandise on my truck. I take the merchandise which is company property to my house and I then sell it off to my friends and neighbors. I keep half of the money and I give the other half to Ray and Alex. This has been going on for about one and one half

years, (1½) or since Alex Jiminez came to work for the company.

In addition, three other truck drivers for the warehouse gave the following statements to Johnson and O'Connell:

### Roger Cortez

I recall telling Dan Savarino, the former warehouse manager, that merchandise was being stolen from the warehouse and he told me that was the American way, and that it happens in every company. I also recall seeing Alex Jimenez throw a box over the fence that I believe contained spark-plugs. This was maybe nine months to a year ago.

Extra merchandise has been put on my truck, but I always bring it back. Ray Ortiz and Alex would try to get me to keep it off the truck so they could sell it, but I have refused to do this.

### Marcus Castro

I saw Ray Ortiz in the spark plug room stuffing Chamois down the inside front of his pants. I reported this to Mr. Dan Savarino the manager at the time.

\* \* \* \* \* \*

Ray Ortiz approached me and asked to add a case of Sealbeams to my load, because he knew he would be riding with me that day to help unload. I refused.

### Raymond Perez

For the past two to two and one half (2½) years I have seen merchandise being taken illegally from the warehouse. Arnold Ortiz, a truck driver and his cousin Ray Ortiz, a warehouseman and one other individual who help load the trucks are involved. This person is Alex Jimenez who is also a warehouseman.

\* \* \* \* \* \*

The merchandise is taken by these men from the shelfs in the warehouse and put on the pallets after the manifest is written and after the manager has checked off the merchandise. After the stolen merchandise is loaded on the truck it would be dropped off at various locations. One spot I know of was Shorty's

Diamond Shamrock station in Pharr. I also know that Ray Ortiz stole a two wheel truck from the warehouse that he sold to drivers that frequent Shorty's. I also know these men would throw spark plugs they stole over the warehouse fence and pick them up later.

\* \* \* \* \* \*

I also recall seeing Ray Ortiz putting chamois into the front of his pants that he had stole [sic] from the warehouse.

Later Tuesday evening, Arnold Ortiz and his wife asked to meet with Johnson and O'Connell to talk about the investigation. They agreed to get together for drinks at the hotel where Johnson and O'Connell were staying. Arnold Ortiz then explained to them that appellee and Jimenez hadn't stolen the goods put on his truck, but had bought them from Savarino as damaged merchandise.

The next day, Johnson and O'Connell turned the statements over to the La Feria police department and repeatedly called the police to discuss what would be done about the situation. That afternoon, Officer Estrada came to the warehouse office. Appellee and Jimenez were called to the office and Estrada took them down to the police station for questioning. They were later arrested after Estrada filed a complaint against them for felony theft on the basis of Arnold Ortiz' statement against them. Shortly thereafter, Arnold Ortiz was also arrested for felony theft.

Several weeks later, an examining trial was held before Justice of the Peace Henry Dierks to determine if there was probable cause to hold appellee for felony theft. Johnson, Cortez and Castro testified against appellee at the examining trial. Johnson, knowing that Savarino had been responsible for the loss of the oil drum, testified that the drum and a number of other items were missing from the La Feria warehouse. Then, after the prosecutor asked if he had ever given appellee, Jimenez or Arnold permission to take this property, Johnson replied "no," without elaborating upon his knowledge that Savarino had taken the oil drum. Justice Dierks found probable cause. Shortly after the

examining trial, however, the district attorney declined to prosecute the case because of insufficient evidence.

Appellee testified at trial that he hasn't worked since his arrest in 1983, but now stays home taking care of his children while his wife works. He further testified that he suffered from alcoholism, depression and humiliation as a result of this incident.

In points one through three, six and seven, appellants complain that there is no evidence to support the jury's findings on the elements of malicious prosecution.

■ The elements of malicious prosecution are:

(1) the commencement of a criminal prosecution against plaintiff;

(2) which has been caused by the defendant or through defendant's aid or cooperation;

(3) which terminated in favor of the plaintiff;

(4) that plaintiff was innocent;

(5) that there was no probable cause for such proceedings;

(6) that it was done with malice; and

(7) resulted in damage to plaintiff.

*Thomas v. Cisneros,* 596 S.W.2d 313, 316 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.); *Ellis v. Sinton Savings Association,* 455 S.W.2d 834, 836 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.).

■ In deciding a no evidence point, we consider only the evidence and inferences which support the jury finding and disregard all evidence and inferences to the contrary. However, the point must be sustained if there is a complete absence of, or no more than a scintilla of evidence which supports the verdict. *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206, 207 (Tex.1985); *Garza v. Alviar,* 395 S.W. 2d 821, 823 (Tex.1965).

■ Actions for malicious prosecution are not favored in the law. *Parker v. Dallas Hunting and Fishing Club,* 463 S.W.2d 496, 499 (Tex.Civ.App.—Dallas 1971, no writ); *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 909 (Tex.Civ. App.—San Antonio 1950, writ ref'd n.r.e.).

Not only does public policy discourage the bringing of such actions, but also the proof must be positive, clear and satisfactory. *Kirkland,* 225 S.W.2d at 909. Where a business or organization discovers what it believes to be criminal behavior during an internal investigation, public policy requires that there be wide latitude in reporting facts to prosecuting authorities in order that the exposure of crime not be discouraged. *Thomas,* 596 S.W.2d at 317.

We will first discuss whether the appellee produced any evidence that the appellants lacked probable cause to act as they did in bringing appellee to the attention of the local police.

■ The burden of proving that no probable cause existed for instituting the proceedings in a malicious prosecution case is initially upon the plaintiff, and there inferably is an initial presumption that a defendant acted reasonably and in good faith and therefore had probable cause. The presumption disappears, however, when the plaintiff produces evidence that the motives, grounds, beliefs and other evidence upon which the defendant acted were indeed not probable cause to commence the proceedings which the defendant instituted. *Akin v. Dahl,* 661 S.W.2d 917, 920 (Tex. 1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). Probable cause has been defined as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Id.,* 661 S.W.2d at 921; *Ramsey v. Arrott,* 64 Tex. 320 (1885).

In the present case, appellants discovered theft in their warehouse at La Feria, where appellee was one of a small group of employees who had regular access to the merchandise being stolen. On further investigation, appellants were given four written statements from warehouse employees implicating appellee in the theft of appellants' property. Had there been no further evidence, probable cause to turn these statements over to the local police and request action would have been obvious and unassailable.

■ However, appellee submits that probable cause was proved to be lacking as a result of appellants' knowledge of other exculpatory information withheld from the police. Appellants generally have a duty to make a full and fair disclosure of all evidence to the police and a failure to make material exculpatory information known to the police could be evidence of a hostile motive or insufficient grounds. *See Eans v. Grocer Supply Co.*, 580 S.W.2d 17, 21 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ First, appellee points to Arnold's explanation to appellants that his written statement was misleading in that appellee had paid for the merchandise he took from the warehouse. This explanation did not discredit the other three statements which described separate instances of theft by appellee. Moreover, appellee presented no evidence that appellants mislead the La Feria police about Arnold's statement or failed to reveal everything that they knew to the police. Even if we assume appellants did not reveal Arnold's explanation to the police, this was at most a harmless oversight, unnecessary in view of the fact that the police also arrested Arnold and had ample opportunity to question him themselves about the truth of his accusations.

Second, appellee points to Johnson's supposedly misleading testimony at the examining trial which appellee claims wrongfully suggested that he was guilty of stealing an oil drum that Johnson knew Savarino had stolen. Johnson's testimony, however, is entirely consistent in light of the fact that he was questioned about many items missing from the warehouse which appellee was suspected of stealing. Appellee had permission to take none of the items Johnson listed. Had Johnson been given an opportunity, he might have singled the oil drum out as an item which he knew appellee did not take, but the prosecutor never asked Johnson to elaborate on this point. Johnson cannot be held responsible for the order or extent of the prosecutor's questions and was not free to make his own unsolicited remarks to further clarify the matter.

Appellee would like this Court to infer from the meager evidence presented that appellants had intentionally set him up to be arrested, and revealed only incriminating evidence to the police. *Cf. Eans*, 580 S.W.2d at 20–21. This is clearly not the case here. We hold that the evidence presented by the appellee is legally insufficient to disprove appellants' probable cause to believe appellant had stolen merchandise, and to release incriminating statements to the police and cooperate in the prosecution of appellee. Reasonable minds could not dispute the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the appellants' knowledge, that appellee was guilty of felony theft. Appellants' second point of error is sustained.

Having found that there was no evidence that appellants lacked probable cause to proceed as they did, we find this to be dispositive of the appeal and we need not address appellants' remaining points of error.

The judgment of the trial court is REVERSED and judgment here RENDERED in favor of the appellants.