ELLIS COUNTY STATE BANK, Tracy Fletcher, John A. Hastings, Jr., and Don Harris, Appellants,

v.

Glenn KEEVER, Appellee.

No. 05–91–02114–CV.

Court of Appeals of Texas, Dallas.

Dec. 16, 1992.

Veronica M. Bates, R. Brent Cooper, R. Michael Northrup, Dallas, for appellants.

Robert F. Wood Jr., Dallas, for appellee.

Before THOMAS, BURNETT and WIGGINS [1], JJ.

## OPINION

BURNETT, Justice.

We withdraw our opinion of October 27, 1992 and vacate the judgment of October 27, 1992. The following are now the court's opinion and judgment.

---

1. The Honorable Kevin B. Wiggins, Justice, participated in this cause at the time it was submitted for decision. Due to Justice Wiggins's leav-
ing office on December 14, 1992, he did not participate in the issuance of this opinion.

Ellis County State Bank, Tracy Fletcher, John A. Hastings, Jr., and Don Harris (collectively "Ellis Bank") appeal the malicious prosecution action brought by Glenn Keever. In six points of error, Ellis Bank asserts that the evidence is insufficient to show that it acted with malice and without probable cause and insufficient to support the award of future medical expenses. Ellis Bank further contends that the trial court erred in (1) failing to instruct the jury that the burden of proof was clear and convincing evidence, (2) allowing an excessive award of punitive damages, and (3) awarding prejudgment interest on future and punitive damages. We sustain Ellis Bank's second point of error concerning prejudgment interest on punitive damages and overrule its remaining points of error. Accordingly, we reverse the trial court's award of prejudgment interest on punitive damages and render that Keever not recover prejudgment interest on punitive damages and affirm the remainder of the judgment.

## FACTS AND PROCEDURAL HISTORY

In February 1987, Glenn Keever executed a 90–day note for $6,000 with the First State Bank of Milford. As collateral for the loan, the bank took a security interest in office equipment and furniture. On May 4, 1987, Keever filed for protection under Chapter 13 of the bankruptcy code. On May 7, 1987, the note came due. In June 1987, Don Harris purchased all of the assets, including the loan to Keever, from the First State Bank of Milford. Harris obtained a new charter and renamed the bank Ellis County State Bank. Tracy Fletcher, the executive vice president, attempted to collect the loan from Keever.

### Plaintiff's Testimony

When Fletcher first called to discuss the note, Keever informed her of the bankruptcy filing and provided his case number and attorney's name. Subsequently, Fletcher made several telephone calls and sent a registered letter to Keever stating that the note was in default. The letter made formal demand for payment in full or return of the collateral. Keever called Fletcher to inform her that a creditors' meeting was scheduled for October 23, 1987. At the creditors' meet-

ing, the bankruptcy court instructed Keever to include Ellis County State Bank on the matrix and to turn over the collateral to the bank. In November, Fletcher failed to keep an appointment with Keever to pick up the collateral.

In February 1988, John Hastings, the attorney for Ellis County State Bank, sent Keever a registered letter and called him on the telephone. The February 29 letter stated that Keever was in violation of hindering a secured creditor and instructed Keever to return the collateral. In response to this letter, Keever called Hastings and told him that he was in bankruptcy and gave him the case number. Hastings contacted Keever's bankruptcy attorney, John Glaze, and made additional arrangements for the bank to pick up the collateral. The bank failed to make its August 26 appointment to collect the collateral.

### Defense Testimony

Defense testimony differs significantly from the testimony presented by Keever. As a result of several past due notices and phone calls, Keever agreed to pay the bank $1,000 plus interest and sign a new note. With Keever failing to uphold this agreement, Fletcher made a formal written demand for the collateral on August 28, 1987. On October 20, 1987, Keever informed Fletcher that he filed for bankruptcy in May 1987. Consequently, Fletcher immediately turned the matter over to the bank's attorney, John Hastings.

Unable to verify Keever's bankruptcy, Hastings and Fletcher continued attempts to retrieve the collateral. Keever failed to show up at the appointment made to pick up the collateral. Hastings sought an appointment with the grand jury to seek an indictment for hindering a secured creditor. After making this appointment, Hastings continued attempts to negotiate with Glaze, writing the attorney several times and speaking with him over the telephone.

Unsuccessful in their attempts to collect the collateral, Hastings and Fletcher testified before the grand jury. At the malicious prosecution trial, Hastings and Fletcher stated that they testified truthfully before the

grand jury and did not attempt to mislead or deceive the grand jury in their testimony. Both Hastings and Fletcher testified that they informed the grand jury about Keever's bankruptcy.

### Indictment and Arrest

In December 1987, Ellis Bank brought the case before the Ellis County grand jury to seek an indictment against Keever for hindering a secured creditor. Ellis Bank did not pursue the indictment until November 15, 1988. Hastings and Fletcher testified before the grand jury. Keever did not appear before the grand jury. The grand jury issued an indictment on November 15, 1988, which was later dismissed due to a typographical error. On November 29, 1988, a second indictment issued. On December 2, 1988, Keever learned of the indictment and turned himself into the police. Keever was arrested and incarcerated until making bail. Keever was arraigned on December 28, 1988 and plead not guilty. The criminal district court quashed the indictment, and the district attorney declined to seek reindictment. On August 30, 1990, Ellis Bank received the collateral.

### Malicious Prosecution Action

Subsequently, Keever brought a malicious prosecution action against Don Harris, Tracy Fletcher, John A. Hastings, Jr., and Ellis Bank. At the trial, Keever testified that as a result of the criminal indictment, he suffered from post-traumatic stress disorder and depression. At the conclusion of the trial, the jury awarded Keever actual damages of $110,600, jointly and severally against all Defendants. The jury awarded punitive damages of $1,000,000 against the bank; $25,000 against Fletcher; $260,000 against Hastings; and $250,000 against Harris.

### SUFFICIENCY OF THE EVIDENCE

In three points of error, Ellis Bank asserts that the evidence is insufficient to show that Ellis Bank acted with malice and without probable cause in pursuing an indictment for hindering a secured creditor and insufficient to support the jury finding of future medical expenses.

When determining a factual sufficiency point of error, this Court must consider and weigh all the evidence in the case. We should set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). It is an erroneous ruling of law that the existence of any evidence of probative force in support of the verdict determines that the verdict is not contrary to the overwhelming weight of all the evidence. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

### Probable Cause

In its sixth point of error, Ellis Bank asserts that the evidence is insufficient to show that it acted without probable cause in instituting criminal proceedings against Keever. Ellis Bank asserts that no probable cause existed because Ellis Bank and its employees testified truthfully before the grand jury and made no attempt to deceive the prosecutor or the grand jury.

A claim for malicious prosecution entails the following seven essential elements:

1. A criminal prosecution was commenced against the plaintiff;

2. The prosecution was caused by the defendants or by and through their aid and cooperation;

3. The prosecution terminated in favor of the plaintiff;

4. The plaintiff was innocent;

5. The defendants lacked probable cause to bringing about the proceeding;

6. The defendants acted with malice in bringing about the proceeding; and

7. The plaintiff suffered damages as a result.

*Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ).

The burden of proving that no probable cause existed for instituting the proceedings in a malicious prosecution case is

68

initially upon the plaintiff. There is, invariably, an initial presumption that if a defendant acted reasonably and in good faith, he had probable cause. The presumption disappears, however, when the plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted were indeed not probable cause for commencing the proceedings that the defendant instituted. *Id.* at 949.

■ Probable cause for a criminal prosecution has been defined as the existence of such facts and circumstances as would excite belief in the mind of a reasonable person, acting on facts within his knowledge, that the person charged was guilty of the crime for which he was prosecuted. *Id.* at 950. A party who files or causes to be filed a criminal complaint against another person does so with probable cause if, in good faith, she makes a full and fair disclosure of the facts and circumstances known to her, and the complaint is filed on the basis of that disclosure. *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902, 910 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd); *Eans v. Grocer Supply Co.,* 580 S.W.2d 17, 21 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). If the party causing the complaint to be filed does not act in good faith in disclosing to the prosecuting attorney or grand jury all material facts known to the party, probable cause does not exist. *Compton,* 811 S.W.2d at 950; *Eans,* 580 S.W.2d at 21.

■ When facts that might have a bearing on the element of probable cause in a malicious prosecution action are undisputed, the issue of probable cause is a question of law to be decided by the court. *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 908 (Tex. Civ.App.—San Antonio 1949, writ ref'd n.r.e.). If the facts are conflicting, as they are in this case, whether the defendant made a full and fair statement to the grand jury in instituting the prosecution is a question for the jury. *Andrews v. Dewberry,* 242 S.W.2d 685, 689 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). On review, the jury's finding will not be set aside unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust. We are not the fact finder and cannot judge the

credibility of the witnesses or substitute our judgment for the trier of fact. *See Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex.App.—Dallas 1988, writ denied).

In the present case, the facts surrounding the bank's attempt to secure payment of the note or retrieve the collateral are conflicting and contested. Only Hastings and Fletcher testified before the grand jury. In the malicious prosecution action, both Hastings and Fletcher testified that they believed probable cause existed to institute criminal proceedings, they testified truthfully before the grand jury, and they did not attempt to mislead or deceive the grand jury in their testimony. Likewise, Keever related his version of the events and attempted to discredit Fletcher and Hastings and their testimony.

Both Hastings and Fletcher testified that they told the grand jury about Keever's bankruptcy. Mary Lou Shipley, the district attorney, testified that she did not learn of Keever's bankruptcy until after the grand jury hearing. The record reflects that the jury could determine that neither Fletcher nor Hastings told the grand jury about Keever's bankruptcy. Keever testified that he was ready and willing to release the equipment to bank officials. Keever explained that Ellis Bank failed to follow through with scheduled appointments to pick up the collateral. Keever argued that Fletcher and Hastings falsely testified to the grand jury concerning attempts to retrieve the collateral.

If Ellis Bank did not act in good faith, probable cause did not exist. The record contains evidence upon which the jury could determine that Ellis Bank withheld material information and presented false testimony to the grand jury. Such evidence is factually sufficient to support the jury's finding that Ellis Bank acted without probable cause in instituting criminal proceedings against Keever. Any conflicts in the evidence and the inferences to be drawn were for the jury to resolve. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). We overrule Ellis Bank's sixth point of error.

### Malice

■ In its fifth point of error, Ellis Bank asserts that insufficient evidence exists to

support the jury's finding that Ellis Bank acted with malice. Ellis Bank contends that it never exhibited any malice toward Keever, and it gave him more than 18 months after his note was due to return the collateral before instituting criminal proceedings.

Malice has been defined as ill will or evil motive or such gross indifference or reckless disregard for the rights of others as to amount to wanton and willful action, knowingly and unreasonably done. *Fisher v. Beach,* 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ). To establish malice, it is not necessary to prove that the defendant acted with personal spite or ill will; it is sufficient to show the defendant committed wrongful acts in reckless disregard of another's rights and with indifference as to whether that party would be injured. *Reed v. Lindley,* 240 S.W. 348, 351 (Tex.Civ.App.—Fort Worth 1922, no writ). Malice may be established by direct or circumstantial evidence. *Fisher,* 671 S.W.2d at 67. Because it is difficult to prove a person's state of mind, malice can be inferred from want of probable cause. *Id.; Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied).

Upon hearing the evidence and assessing the demeanor and credibility of the witnesses, the jury found that Ellis Bank acted with malice in prosecuting Keever. After reviewing the record, we find Ellis Bank's lack of sufficient evidence contention without merit. The jury was presented with conflicting evidence, and it made a determination as to Ellis Bank's actions. Keever testified that he told Fletcher about filing for bankruptcy during their first conversation; hence, the jury could determine that Ellis Bank knowingly sent demand letters while Keever was in bankruptcy. The record contains evidence that Ellis Bank withheld material information and presented false testimony to the grand jury. Failure to make a full and fair disclosure of all information can be evidence of a hostile motive. *Diamond Shamrock,* 753 S.W.2d at 242.

This Court found the evidence factually sufficient to support the jury's finding of no probable cause. Likewise, this same evidence is factually sufficient to establish mal-

ice as it shows a reckless disregard for Keever's rights. *See Fisher,* 671 S.W.2d at 67. After considering and weighing all the evidence, no facts suggest to this Court that the jury could not have also inferred from the evidence adduced at trial that Ellis Bank acted with malice in instituting criminal charges against Keever. Because we cannot say that the jury's finding of malice is so against the great weight and preponderance of the evidence as to be manifestly unjust, we overrule Ellis Bank's fifth point of error.

### Future Medical Expenses

In its fourth point of error, Ellis Bank asserts that insufficient evidence exists to support the trial court's award of future medical expenses. Ellis Bank argues that Keever failed to prove that he would incur any future medical expenses due to any physical problems and that the expenses due to psychological problems are based upon reasonable medical probability.

Texas follows the reasonable probability rule for future damages for personal injuries. *Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). Adhering to the reasonable probability rule, the Texas courts have also consistently held that the award of future medical expenses is a matter primarily for the jury to determine. No precise evidence is required. The jury may make its award based upon the nature of the injuries, the medical care rendered before trial, and the condition of the injured party at the time of trial. *Id.* (citations omitted).

The record shows that Dr. Gant testified that Keever was suffering from depression and post-traumatic stress disorder and would need to be hospitalized for six months to one year. Dr. Gant then testified that the cost of such treatment for one year would range from $190,000 to $400,000. Such evidence is factually sufficient to support the jury's answer to the issue of future medical expenses. We overrule Ellis Bank's fourth point of error.

### JURY CHARGE

In its first point of error, Ellis Bank asserts that the trial court erred in failing to

instruct the jury that the plaintiff's burden of proof was clear and convincing evidence. Ellis Bank asserts that the trial court incorrectly instructed the jury that the plaintiff was required to prove his case only by a "preponderance of the evidence" when case law establishes a burden of "clear and convincing evidence." *See Wal–Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73 (Tex.App.—Corpus Christi 1991, writ denied).

Actions for malicious prosecution are not favored in the law. *Compton*, 811 S.W.2d at 949. There are high burdens of proof and rigorous elements of proof to insure that there will be no liability for citizens who, in good faith, assist the police. *Wal–Mart*, 814 S.W.2d at 73. Proof must be positive, clear and satisfactory. *See Andrews*, 242 S.W.2d at 687. Nevertheless, this requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence. *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975); *see also Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 209 (1950); *Andrews*, 242 S.W.2d at 687.

The Supreme Court of Texas has specifically spoken on the Texas standard of proof in *State v. Turner*, 556 S.W.2d 563 (Tex. 1977):

> Some courts in other jurisdictions make a distinction between the standard of clear and convincing evidence and the usual civil standard of the preponderance of the evidence; however, Texas Courts review evidence by but two standards: factual sufficiency and legal sufficiency. The requirement of clear and convincing evidence is merely another method of requiring a cause of action be supported by factually sufficient evidence.

*Id.* at 565. The statement that "proof must be positive, clear and satisfactory" is an admonition to exercise great caution in weighing the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 n. 2 (Tex.1990). Where the "clear and convincing" rule is applicable in an ordinary civil suit for damages, the trial judge is admonished to set the verdict aside and order a new trial if, in the opinion of the trial judge, the evidence in support of the verdict does not meet the test of that rule.

*Sanders*, 227 S.W.2d at 210. However, this instruction does not supplant the usual standard of proof by a preponderance of the evidence. *Rhodes*, 802 S.W.2d at 645 n. 2.

Under the present state of the law, Texas courts are bound to instruct the jury in an ordinary civil case that all factual issues are to be determined by the preponderance of the evidence standard. The trial court so instructed the jury in this case, and consequently, there is no error. Ellis Bank's first point of error is overruled.

## AMOUNT OF PUNITIVE DAMAGES

■ In its third point of error, Ellis Bank asserts that the trial court erred in failing to order remittitur as to the amount of exemplary damages. Ellis Bank contends that the award of punitive damages is controlled by section 41.007 of the Texas Civil Practice and Remedies Code, which limits the amount of exemplary damages. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1992). Keever asserts that chapter 41 is not applicable to an action for malicious prosecution.

Section 41.002(a) provides:

> This chapter applies to an action in which a claimant seeks exemplary damages relating to a cause of action as defined by Section 33.001.

TEX.CIV.PRAC. & REM.CODE ANN. § 41.002 (Vernon Supp.1992). Section 33.001 describes actions to recover damages for negligence resulting in personal injury, property damage, or death and actions for strict tort liability, strict products liability, or breach of warranty under Chapter 2 of the Texas Business & Commerce Code. TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1992). The theory in this case, malicious prosecution, does not fall into any of the categories listed in section 33.001. Chapter 41 of the Texas Civil Practice and Remedies Code does not apply and does not supersede the common law regarding punitive damages. *Cf. Transfer Products v. TexPar Energy*, 788 S.W.2d 713, 717 (Tex.App.—Austin 1990, no writ) (holding that chapter 41 does not apply to an action for conversion).

■ At common law, an award of exemplary damages rests in the jury's discre-

tion and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion and prejudice or that evidence has been disregarded. *Aetna Casualty & Sur. Co. v. Joseph,* 769 S.W.2d 603, 607–608 (Tex.App.—Dallas 1989, no writ). Exemplary damages must be rationally related to actual damages. However, there is no set rule or ratio between the amount of actual and exemplary damages that will be considered reasonable. *Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 53–54 (Tex. App.—Dallas 1989, writ dism'd).

▉ In determining whether an exemplary damage award is reasonable, this Court evaluates the facts of each case, taking into account (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which the conduct offends the public sense of justice and propriety. *Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987). Exemplary awards do not depend upon rules of fair compensation but rather upon rules of just punishment. The amount of the award rests largely within the discretion of the jury. *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705, 708 (Tex.1970); *Transmission Exch. Inc. v. Long,* 821 S.W.2d 265, 272 (Tex. App.—Houston [1st Dist.] 1991, writ denied). This Court will not set aside the jury's verdict if probative evidence supports it. *Transmission Exch.,* 821 S.W.2d at 272–73.

▉ Our review of the sufficiency of the evidence under Ellis Bank's fifth and sixth points of error indicates ample evidentiary support for the jury's finding that Ellis Bank acted with malice. The evidence of Ellis Bank's malicious conduct is sufficient to support an award of punitive damages. Where the jury finds that Keever suffered actual damages of $110,600 and finds malice on the part of Ellis Bank, an award of $1,000,000 is not patently unreasonable. This Court cannot say under these facts that the award was so excessive as to indicate passion or prejudice on the part of the jury. Because the evidence is factually sufficient to support the jury's award of exemplary damages, the jury

verdict will not be disturbed. We overrule Ellis Bank's third point of error.

## PREJUDGMENT INTEREST

In its second point of error, Ellis Bank asserts that the trial court erred in awarding prejudgment interest on future and punitive damages.

### Future Damages

Ellis Bank asserts that the trial court erred in awarding prejudgment interest on future medical expenses. Ellis Bank contends that an award of prejudgment interest on future damages violates several provisions of the Texas Constitution. Ellis Bank further argues that an award of prejudgment interest on future damages is excessive and usurious under article 5069 of the Texas Revised Civil Statutes Annotated.

#### A. *Article 5069–1.05, Section 6*

▉ The award of prejudgment interest on future damages is governed by article 5069–1.05, section 6 of the Texas Revised Civil Statutes Annotated. Section 6 provides:

Judgments in wrongful death, *personal injury,* and property damage cases must include prejudgment interest.

TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1992) (emphasis added). The language of the statute makes no distinction between damages awarded in the judgment for past damages and damages awarded for future damages. *C & H Nationwide v. Thompson,* 810 S.W.2d 259, 276 (Tex.App.— Houston [1st Dist.] 1991, writ granted). Moreover, John T. Montford, the principal author of the senate tort reform package, states that the new prejudgment interest law, codified at TEX.REV.CIV.STAT.ANN. art. 5069–1.05 § 6, expands prejudgment interest to future damages included in the judgment. Barber & Montford, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 HOUS.L.REV. 59, 102–103 (1988) [hereinafter Barber & Montford]. We conclude that the law in Texas now allows recovery, in personal injury cases, of prejudgment interest on future damages. *Hughes v. Thrash,* 832

S.W.2d 779, 787 (Tex.App.—Houston [1st Dist.] 1992, no writ); *see also Sisters of Charity of The Incarnate Word v. Dunsmoor,* 832 S.W.2d 112, 115–16 (Tex.App.—Austin 1992, writ denied); *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 596–97 (Tex.App.—Texarkana 1992, writ requested).

There is little doubt that malicious prosecution is a personal injury case covered by the statute. *Cf. Southwestern Bell Telephone v. Wilson,* 768 S.W.2d 755, 763 (Tex.App.—Corpus Christi 1988, writ denied) (tortious collection practices constitute personal injury); *Tatum v. Liner,* 749 S.W.2d 251, 262 (Tex.App.—San Antonio 1988, no writ) (prejudgment interest is recoverable in tort cases). Therefore, an award of prejudgment interest on future medical expenses in a malicious prosecution suit is authorized by article 5069–1.05, § 6. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1992).

### B. *Open Courts Provision*

 Ellis Bank further asserts that an award of prejudgment interest on future damages in a personal injury case denies due process, in violation of the open courts provision. Ellis Bank argues that the legislature codified the common law method of recovery of prejudgment interest without including the well-established common law defenses. Therefore, article 5069–1.05, section 6 places such a costly surcharge or penalty on the determination of settlement value that it hinders the defendant's access to the courts.

Article I, section 13 of the Texas Constitution provides

All courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law.

The right of access to the courts is a substantial right, and the legislature cannot arbitrarily or unreasonably interfere with a litigant's right of access. *LeCroy v. Hanlon,* 713 S.W.2d 335, 341 (Tex.1986). Thus, the general open courts provision test balances the legislature's actual purpose in enacting a law against the law's interference with the individual's right of access to the courts. *Id.* at 341; *Sax v. Votteler,* 648 S.W.2d 661, 665–66 (Tex.1983).

The question here is whether prejudgment interest on future damages, as provided for in article 5069–1.05, section 6 is an arbitrary and unreasonable interference with the right of access to the courts. Senator Montford explains

Article 5069–1.05, section 6 codifies *Cavnar* with respect to including personal injury, property damage, and wrongful death cases among the kinds of suits in which prejudgment interest is recoverable. Section 6(a) also expands the *Cavnar* reach of prejudgment interest, which included only damages that have accrued by the time of judgment to apply also to future damages included in the judgment.

Barber & Montford, *supra,* at 104–105 (citations omitted). This new prejudgment interest statute represents a situation where the Legislature weighed the same competing equity/fairness considerations as the courts, but came out with a different conclusion and resolution as a matter of public policy. Barber & Montford, *supra,* at 104–105.

It is true that in some cases the new prejudgment interest statute creates a stronger bargaining position for the injured plaintiff than existed under *Cavnar* and Texas case law. Nevertheless, Ellis Bank fails to show that article 5069–1.05, section 6 unconstitutionally interferes with its right of access to the courts. The legislature reasoned that expanding recoverable prejudgment interest to future damages while shortening the accrual period for most cases, changing from daily-compound to annual-simple interest, tolling accrual for settlement offers, and providing trial court discretion regarding accrual and nonaccrual for periods of delay represents a balance of competing interests. *See* Barber & Montford, *supra,* at 106–107. The Texas Legislature has not arbitrarily or unreasonably denied Ellis Bank the right of access to the court.

### C. *Equal Protection Clause*

 Additionally, Ellis Bank argues that an award of prejudgment interest on future damages in personal injury cases violates the Equal Protection Clause of the Texas Constitution because there is no rational legislative

basis for treating certain contract defendants differently from certain personal injury defendants. When neither a "suspect classification" nor interference with a "fundamental right" is involved, we must sustain a challenged statutory classification if it is "rationally related to a legitimate state interest." *See Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 559 (Tex.1985), *appeal dism'd*, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986). The purpose of article 5069–1.05, section 6 as a whole is to "encourage early settlements and trials" while being as fair as possible. Barber & Montford, *supra*, at 106. We cannot say that the classification within article 5069–1.05, section 6 is wholly irrelevant to this legislative goal. We, therefore, decline to hold that there is no rational relation between the discrimination in the "Tort Reform" Act among defendants based upon the underlying cause of action and the legitimate legislative goal of fairness and the encouragement of settlements. Authorized by article 5069–1.05, section 6, the award of prejudgment interest on future damages in this malicious prosecution case does not violate the Equal Protection Clause of the Texas Constitution.

### D. *Usurious or Excessive Interest*

Next, Ellis Bank asserts that the assessment of prejudgment interest is excessive and usurious. Ellis Bank argues that article 5069–1.01(a) defines interest as "the compensation allowed by law for the use or forbearance or detention of money." Tex. Rev.Civ.Stat.Ann. art. 5069–1.01(a) (Vernon 1987). Hence, to charge an interest on future damages is usurious because there are no compensable damages upon which to charge prejudgment interest.

The term interest encompasses two distinct forms of compensation: interest as interest (*eo nomine*) and interest as damages. Interest as interest is compensation allowed by law or fixed by the parties for the use or detention of money. Interest as damages is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *Cavnar v. Quality Control Park-*

*ing, Inc.*, 696 S.W.2d 549, 551–52 (Tex.1985). Strictly speaking, "interest" is a misnomer when used in reference to prejudgment interest. The word "interest" is employed only for convenience in speaking of "an *element of damages* necessary to the complete indemnity of the injured party." *Texas Dept. of Mental Health v. Petty*, 817 S.W.2d 707, 722 (Tex.App.—Austin 1991, writ granted) (citations omitted). The Texas Legislature determined that prejudgment interest on future medical expenses is an appropriate damage award. Article 5069–1.05, section 6 is not usurious.

Ellis Bank contends that interest on future damages is an excessive fine in violation of Article I, section 13 of the Texas Constitution. Article I, section 13 provides that excessive fines shall not be imposed. Generally, prescribing fines is a matter within the discretion of the legislature. A fine is not unconstitutionally excessive, and the courts will not override the legislature's discretion, "except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980) *citing State v. Laredo Ice. Co.*, 96 Tex. 461, 73 S.W. 951, 953 (1903). The fine is unconstitutional only where the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable. *Id.* In the case at hand, the award of prejudgment interest on future medical damages under article 5069–1.05, section 6 does not manifestly violate the constitutional ban on excessive fines. Tex.Rev. Civ.Stat.Ann. art. 5069–1.05, § 6(a) (Vernon Supp.1992). Accordingly, the trial court did not err in awarding prejudgment interest on future medical expenses.

### Punitive Damages

Ellis Bank contends that this cause of action is governed by section 41.006 of the Texas Civil Practice and Remedies Code, which prohibits prejudgment interest on exemplary damages. *See* Tex.Civ.Prac. & Rem. Code Ann. § 41.006 (Vernon Supp.1992). Keever asserts that chapter 41 does not apply, and the common law prohibition of pre-

judgment interest on exemplary damages was overruled by the enactment of article 5069–1.05, section 6. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Vernon Supp.1992).

Chapter 41 of the Texas Civil Practice and Remedies Code only applies to a claimant seeking exemplary damages relating to a cause of action as defined by section 33.001. Tex.Civ.Prac. & Rem.Code Ann. § 41.002(a) (Vernon Supp.1992). Malicious prosecution does not fall into any category listed in section 33.001. *See* Tex.Civ.Prac. & Rem.Code Ann. § 33.001 (Vernon Supp.1992). Therefore, chapter 41 of the Texas Civil Practice and Remedies Code does not apply and does not supersede the common law regarding exemplary damages. At common law, prejudgment interest was not allowed on exemplary damages. *See Granite Constr. Co. v. Mendoza,* 816 S.W.2d 756, 766 (Tex.App.— Dallas 1991, writ denied) *citing Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985). Under the *Cavnar* line of cases, prejudgment interest cannot be recovered on punitive damages. *See Cavnar,* 696 S.W.2d at 556; *see also Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 636 (Tex. 1986); *Benavidez v. Isles Constr. Co.,* 726 S.W.2d 23, 24 (Tex.1987).

Keever asserts that the common law prohibition of prejudgment interest on exemplary damages was overruled by the enactment of article 5069–1.05, section 6. Tex. Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Vernon Supp.1992). Keever contends that the statute makes no distinction between compensatory and exemplary damages, and therefore, compels the accrual of prejudgment interest on an award of punitive damages. We disagree. It was not the intent of the comprehensive tort reform act of 1987 to overrule *Cavnar* with respect to allowing prejudgment interest on punitive damages. Senator Montford explains

> Under the *Cavnar* case line, prejudgment interest cannot be recovered upon punitive damages. The result is the same under the tort reform laws passed by the 70th Legislature.

Barber & Montford, *supra,* at 114. Based on Texas case law, therefore, the award of prejudgment interest on punitive damages was improper. The trial court erred in assessing prejudgment interest on the punitive damages awarded. We sustain Ellis Bank's point of error concerning prejudgment interest on punitive damages.

Accordingly, we reverse the trial court's award of prejudgment interest on punitive damages and render judgment that Keever cannot recover interest on punitive damages, and affirm the remainder of the judgment.