**TRANSMISSION EXCHANGE INC. & Don Schmidt, Appellants,**

v.

**George W. LONG, Appellee.**

**No. 01–90–00966–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 31, 1991.

Rehearing Granted in Part to Correct Judgment; Rehearing Overruled in Part Dec. 5, 1991.

Rehearing Denied Jan. 9, 1992.

David T. Beale, Houston, for appellants.
Harry Herzog, Houston, for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

SAM BASS, Justice.

## OPINION

Appellant appeals from a money judgment. The case was submitted to a jury on alternative theories of fraud and deceptive trade practices. Based on the jury's answers to special issues, appellee, Long, elected his remedy against appellant, Transmission Exchange, on the jury's findings that Transmission Exchange had defrauded him. Long elected his remedy against Don Schmidt under TEX.BUS. & COM. CODE ANN. § 17.41, et seq., on the jury's findings that Schmidt had violated the Texas Deceptive Trade Practices Act.

We affirm.

Appellee, Long, contacted appellant, Transmission Exchange, on May 10, 1989, seeking a price quote on a rebuilt transmission for his 1976 Cadillac. Long had seen a billboard advertisement of Transmission Exchange that advertised a price of $179.95 for a transmission exchange for "most cars." Appellee remembered the billboard because he had paid $285 for a previous transmission exchange with a torque converter.

Appellee claimed that appellant Schmidt quoted him a price of $326, while Schmidt testified that he told appellee the price would be $426, the "basic price" for exchange and installation of the transmission with torque converter. Based upon his understanding that the price was $326, "all inclusive," Long requested that Transmission Exchange take the Cadillac to its shop where its employees removed the transmission.

When the transmission was out, appellants determined that mounts were needed, at a cost of $22.50. On May 12, Long agreed to the additional charge, but, when Schmidt quoted him a total price of $487.87,[1] Long became angry. Long testified that he thought he was being cheated, and instructed Schmidt to stop work immediately.[2] He expressed his intention to have the car picked up the next morning, but Schmidt refused to release it. According to Long, Schmidt said he would not release the car until Long paid him "what he owed," but did not specify an amount. Long had an attorney call Schmidt. The attorney determined that Schmidt wanted $150 to release the car. Long decided that he would not pay one dollar to get the car, and filed suit on May 19, later amending to allege actions for conversion, fraud, and knowing violations of the DTPA.

Long also obtained a temporary injunction preventing Transmission Exchange from foreclosing on any asserted mechanic's lien and requiring that it store the Cadillac indoors, away from other vehicles or repair operations, on a clean concrete floor, and in a secure building, to prevent damage or vandalism to the car. In spite of the injunction, Long testified that the car was not properly stored and, when he reclaimed it some two and one-half months later, the paint and the plastic trim on the car had been damaged.

Appellants denied Long's claims and responded with allegations of constructive fraud, abuse of process, and harassment. Appellants alleged that Long had failed to mitigate his damages.

In its answers to special issues, the jury found:

(1) both Schmidt and Transmission Exchange had willfully made a material misrepresentation about the price of their services to induce Long to purchase those services, and Long had relied on the misrepresentation in agreeing to the exchange of his transmission;

(2) Schmidt had knowingly violated the DTPA in certain particulars but Transmission Exchange had not;

(3) the defendants had converted Long's car but their conduct in that regard was not malicious;

(4) Long's actual damages were $2189;

(5) Long was entitled to punitive damages against Transmission Exchange in the amount of $30,000 and against Don Schmidt in the amount of $2,500;

(6) Long had failed to mitigate his damages;

(7) Long's damages should be reduced by $1677 because of his failure to mitigate; and

(8) Long had not filed the suit in bad faith or for purposes of harassment.

The trial court entered judgment for Long on July 2, 1990, in the amount of $30,512.07 against appellant, Transmission Exchange, and in the amount of $9,536.21 against appellant, Don Schmidt, and awarded costs of court and attorney's fees in the DTPA cause of action, which were stipulated by the defendants to be $8000.

---

1. Long testified that the total price quoted by Schmidt was $489.

2. Long eventually had the transmission exchanged at another shop. The entire price for the job, including tax and the torque converter, was $350.

Appellants challenge the judgment in 12 points of error. Appellee responds that several of appellants' complaints, specifically those raised in points of error five, six, nine, 10, 11, and 12, have been rendered moot by virtue of appellee's waiver of his $9,536.21 judgment against appellant, Schmidt, and his waiver of the jury's favorable answer on his conversion theory. Appellants contend that appellee has taken no formal steps to effect any such waiver.

Appellant has stated unequivocally in a formal document filed with this Court that he has waived the judgment against appellant Schmidt. He has not retracted this averment. Neither has he responded to appellant's six remaining points of error challenging that judgment. Therefore, we accept appellee's statement of waiver as true and it is binding on him. *See Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983); *Galvan v. Public Util. Bd.,* 778 S.W.2d 580, 583 (Tex.App.—Corpus Christi 1989, no writ). Under these circumstances, we find it unnecessary to address appellant's points of error five, six, nine, 10, 11, and 12 which concern the conversion finding, and the judgment rendered against Schmidt.

In its first three points of error, Transmission Exchange claims that the fraud findings and the punitive damages awarded against Transmission Exchange are not supported by the evidence. We consider this complaint along with the complaint raised in appellants' eighth point of error, that Long's pleadings do not support a judgment for fraud.

The judgment shall conform to the pleadings, the nature of the case proved, and the verdict, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. TEX.R.CIV.P. 301. A petition is sufficient if it gives fair notice of the facts upon which the pleader bases his claim so that the opposing party may adequately prepare his defense. *Roark v. Allen,* 633 S.W.2d 804, 809–10 (Tex.1982); *Stone v. Lawyers Title Ins. Corp,* 554 S.W.2d 183,

186 (Tex.1977). Pleadings are to be construed so as to do substantial justice. TEX. R.CIV.P. 45, 47.

Plaintiff went to trial on his third amended petition that sets out facts involving the alleged misrepresentation of the price of its services by Transmission Exchange. Those facts, if proven, would constitute fraudulent conduct. Contained in paragraph XI of plaintiff's third amended petition, is the statement, "Plaintiff seeks to recover all damages caused as a ... result of defendants' wrongful conduct including ... **fraud.**" The prayer in the petition also requests that "plaintiff have and recover judgment from defendants for all damages caused as a ... result of defendants' wrongful conduct including ... **fraud.**" The special exceptions filed by Transmission Exchange to plaintiff's first amended petition, that plaintiff's pleading did not advise them of the amounts claimed for **fraud** damages, clearly indicate that appellants had notice of the fraud allegations.

No special exceptions were filed to plaintiff's third amended petition. Tex.R.Civ.P. 90. Neither did the appellants object to submission of the fraud issues, questions one through six, to the jury. Any complaint about a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. TEX. R.CIV.P. 274. Consequently, even if a defect did exist, it was waived. We overrule appellants' eighth point of error.

We also find appellants' challenges to the legal and factual sufficiency of the evidence in support of the fraud findings and the punitive damages to be without merit.[3] In reviewing a "no evidence" point of error, we consider only the evidence and reasonable inferences to be drawn therefrom that support the jury's verdict and disregard all contrary evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). If we find more than a scintilla of evidence to support the findings, the find-

---

**3.** While we will recount at this point the evidence of punitive damages, we will discuss the punitive damages award more fully when we address appellant's fourth point of error.

ings must be upheld. *Garza,* 395 S.W.2d at 823; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). A review of the factual sufficiency of the evidence requires that we review all the evidence both in favor of and in opposition to the jury's findings. We may set aside the verdict only if the evidence is so weak or the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza,* 395 S.W.2d at 823.

■ The elements of fraud are: (1) misrepresentation of a material fact with intention to induce action or inaction; (2) reliance on the misrepresentation; (3) by a person who, as a result of such reliance, suffers injury. *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

The facts surrounding the transaction were hotly disputed. Long contended that Schmidt misquoted the price for the repair work in order to induce him to enter into the transaction; he relied on the first price quoted in sending his car to Transmission Exchange; and he was injured by Transmission Exchange's intentional practice of raising the price once the work was begun.

Considerable evidence, including the statement of Mr. Schmidt, was offered to show that Transmission Exchange employed such a classic "bait and switch" technique. Schmidt himself stated that although Transmission Exchange's billboard offered a "completely rebuilt transmission for $179.95" for "most cars," no one ever drove out of their shop with a transmission exchanged for that amount. Other charges such as charges for checking the transmission, taking it out and putting it back, and adding transmission fluid were always added. In fact, Schmidt testified that at the time of the transaction in issue, the average ticket price on a car was $450. At the time of trial that average was about $512.

Long also presented the testimony of Pat Therrien, the registered agent of Transmission Exchange, Inc. Therrien testified that the allegations in Long's petition resembled other customers' complaints.

During her employment, Therrien was instructed to keep two sets of invoices so that cash invoices could be diverted from the company's deposits into a secret fund called the "I" fund. Those cash sales were not reported in any of the company's books nor was sales tax paid on them. Therrian claimed that Sam Jones contacted her just before trial and asked her to have lunch with him. When she met him, he suggested that if she said "the wrong thing" at trial, she could "open a can of worms." He also told her that "it could be as bad for [her] as it could be for the company."

Schmidt admitted that he had materially altered certain evidence, but was unaware that this alteration might be considered improper. In December 1989, Schmidt added at least two material statements to the invoice. Although he stated in testimony that he had told both Long and Long's attorney that there was $150 due on the car before he would release it, Schmidt admitted changing the invoice to read "n/c" or "no charge." However, Schmidt never told Long that he could have the car back at no charge. Appellants painted over the price advertised on the billboard after suit had been filed.

DeLeon, a former Transmission Exchange employee, testified that the appellants systematically "upped" prices to defraud customers. According to DeLeon, the same transmission job advertised for $179.95 on the billboard was advertised to Hispanics by way of a coupon offer at $99. DeLeon, who is Hispanic, was supposed to deal with the Hispanic clientele. He stated that the ad in Spanish was designed to suggest that the total price was $99 when, in fact, it was really $99 plus installation. Even with the coupon, he never sold a transmission for less than $321. DeLeon stated that he no longer worked at Transmission Exchange because of these practices.

We find this evidence legally sufficient to support the jury's affirmative findings on the fraud issues and thus overrule appellant's no evidence challenge. We next examine the evidence contrary to the jury's

answers to determine appellant's challenge to the factual sufficiency of the evidence.

Appellants argued that this case involved a miscommunication or a mistake over a mere $100 or $150. It was their position at trial that Long could have paid the $150 and gotten his car but instead he ran up his damages by renting a replacement car and requiring Transmission Exchange to store his car. Appellants testified that, prior to suit being filed, they offered to fix the car for $326 even though the regular price was $426 but Long refused. Long allegedly was given another opportunity to reclaim his car after filing suit when Sam Jones told him he could have the car if he dropped the lawsuit. He rejected that opportunity as well.

Appellant, Schmidt, general manager for Transmission Exchange, denied quoting the incorrect price and insisted that he quoted Long a price of $426 from the very first conversation. Schmidt testified that he had taken notes of this initial conversation, but never offered the notes as evidence. When questioned, Schmidt first claimed simply that he had not brought the notes to trial. He also stated that his attorneys might have the notes, but that he had never produced the notes to Long during discovery. If his attorneys had them, he did not know whether he could persuade the attorneys to let the jury see the notes.

Appellants also argued that the Transmission Exchange billboard was not misleading. If a customer had come in seeking a rebuilt transmission for $179.95, they would sell it—but not install it—for that amount. Appellants also stated that the base price had increased to $225 at the time Long came in, but the billboard still said $179.95. Since Long did not claim that Transmission Exchange had added unnecessary repair costs to his job, appellants argue that the billboard ad was irrelevant; however, appellants did not object to admission of this evidence at trial.

Appellants pointed out that, although Pat Therrien had worked for Bob Jones in another business, she had not worked for Transmission Exchange since 1988 when she was fired by Sam Jones. Therrien had stated that Transmission Exchange had done about 6,500 exchanges in two and one-half years and had been sued only five times. Therrien did not testify to any specific act of fraudulent price raising. Sam Jones testified that Therrien had been discharged for theft, however, Therrien vehemently rebutted this claim.

Other testimony included that of Sam Jones, the owner's son, who said he has had few problems with customers and Dan Parsons, Better Business Bureau representative, who testified that the Bureau had recorded only six complaints against Transmission Exchange since it became a member in 1988.

According to appellants, Joseph DeLeon quit after having a disagreement with Bob Jones, the owner. He spoke Spanish and dealt with Hispanic customers. DeLeon sold only eight jobs during the short time he worked in sales; three of those were billed for $280, $296, and $300; therefore, he had sold jobs for less than the $321 minimum to which he had testified. Sam Jones testified that he never told DeLeon or anyone else to provide unneeded parts.

Sam Jones testified that DeLeon and Therrien became friendly and that Pat became "less personal with us as a family" after the relationship with DeLeon began. She was "always in a nice mood toward us, but her interest turned toward Mr. De-Leon." DeLeon and Therrien were married after he left the company. Finally, appellants argue that Therrien's testimony about double invoices and the "I" fund was irrelevant. However, appellants did not object to this testimony at trial.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We may not substitute our opinion for that of the trier of fact. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–34 (Tex.1986). The jury's answers to the fraud issues are supported by sufficient evidence. *See National Union Fire Ins. v. Dominguez*, 793 S.W.2d 66, 72–73 (Tex.

App.—El Paso 1990, writ denied). We overrule points of error one, two and three.

■ In point of error four, appellants challenge the award of punitive damages against Transmission Exchange, contending that there was no jury finding of actual damages attributable to fraud, and punitive damages should not have been awarded. For punitive damages to be awarded, there must be a finding of a willful tort and actual damages resulting from it. *Nabours v. Longview Sav. & Loan Ass'n.*, 700 S.W.2d 901, 904 (Tex.1985).

■ Four questions encompassing the elements of fraud were submitted to the jury as special issues one through four. Issues five through 10 covered elements of the DTPA and conversion causes of action. The evidence under all three theories submitted by the plaintiff involved the same conduct on the part of Transmission Exchange. Special issue number 11, the damages question, was submitted broadly, "What sum of money, if any, if paid now in cash, would fairly compensate the plaintiff for *any damages* he sustained?" (Emphasis added.) Appellants did not object to the broad form of this submission nor did they object to the omission of a separate issue on the fraud damages. Appellant's failure to object to the omission of a fraud damages question as part of that cluster of issues alone waived the submission of separate damages issues to the jury. *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 165 (Tex.1982); Tex.R.Civ.P. 279.

We hold that the jury's affirmative answers to special issues number one, two, three, four, and five along with its finding of actual damages in response to special issue 11 constitutes a finding of a willful tort on the part of Transmission Exchange and actual damages resulting from it.

■ Appellants next challenge the legal and factual sufficiency of the evidence to support the jury's finding of puni-

tive damages. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622, 623 (Tex.1986).[4] Appellants also assert that the amount of the damages must be "reasonably proportioned" to the actual damages found by the jury. *Southwestern Inv. Co. v. Neeley*, 452 S.W.2d 705, 707 (Tex.1970); *Nabours*, 700 S.W.2d at 904. Appellee contends that chapter 41, Tex.Civ.Prac. & Rem.Code Ann. (Vernon Supp.1991) has replaced the common-law rules on exemplary damages. That statute provides in relevant part as follows:

**41.007. Limitation on Amount of Recovery**

Except as provided by Section 41.008, exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater.

**41.008. Exception**

Section 41.007 does not apply to exemplary damages resulting from ... an intentional tort.

We conclude that those provisions of chapter 41 that purport to restrict recovery of exemplary damages do not apply to a cause of action for fraud, which is an intentional tort. *See Schenck v. Ebby Halliday Real Estate*, 803 S.W.2d 361, 370–71 (Tex. App.—Fort Worth 1990, no writ). We review the award of punitive damages under the principles of common law.

■ There is no set rule or ratio between the amount of actual and exemplary damages that will be considered reasonable. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). A determination of reasonableness must depend on the facts of each particular case and the ratio is only one factor to be considered in that determination. *Id.* The amount to be awarded rests largely in the discretion of the jury. *Neeley*, 452 S.W.2d at 708. The jury's verdict will not be set aside on grounds of excessiveness if there is any probative evidence to support it. *Lawson–Avila Const. Inc. v. Stoutamire*, 791

---

**4.** Although appellants asked the trial court to disregard the jury's punitive damages finding, they did not object to the submission of the issue.

S.W.2d 584, 598 (Tex.App.—San Antonio 1990, writ denied); *Kraus v. Alamo Nat'l Bank*, 586 S.W.2d 202, 208 (Tex.Civ.App.—Waco 1979), *affirmed*, 616 S.W.2d 908, 910 (Tex.1981); *see also Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 666 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

Factors to consider in determining whether an award of exemplary damages is reasonable include: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo Nat'l Bank*, 616 S.W.2d at 910. In *Alamo Nat'l Bank*, a negligence case, the jury awarded the plaintiff $25,800 in actual damages and $500,000 in punitive damages. After finding that there was sufficient evidence from which the jury could have concluded that the bank willfully ignored safety regulations and acted with recklessness and conscious indifference, the appellate court affirmed the punitive damages award. 586 S.W.2d at 207–08. The supreme court affirmed, specifically noting that the appellate court had employed the correct standard in its review of the exemplary damages. 616 S.W.2d at 910.

The supreme court has recognized another test of the reasonableness of punitive damages. The financial ability of the defendant is relevant and may be considered by a jury in its determination of the amount of punitive damages to be awarded. *Lunsford v. Morris*, 746 S.W.2d 471, 472–73 (Tex.1988). Appellee points out that in this case the punitive damages are not excessive when measured in terms of the appellant's ability to pay. On the basis of the appellant's net worth alone, appellee argues that the punitive damages, which amount to only about $5.00 per job, are reasonable. *See Lunsford*, 746 S.W.2d at 472–73.

Our review of the sufficiency of the evidence under appellant's points of error one, two and three, as detailed above, indicates ample evidentiary support for the jury's finding that the misrepresentation by Transmission Exchange was willfully made. Evaluating the evidence under the factors set out in *Alamo Nat'l Bank*, there was sufficient evidence to support the appellee's theory of the case that the appellant ran a dishonest repair shop; that the appellant's conduct constituted a "bait and switch" operation; that appellants habitually cheated customers, especially the "little guys;" and that when appellants realized that appellee was willing to pursue his remedies at law, they instituted a cover-up in an attempt to avoid the consequences of their actions. Although Transmission Exchange now claims that much of the evidence in this regard was irrelevant, no such objection was stated at trial.

The evidence of the appellant's willful conduct is sufficient to support an award of punitive damages and the jury verdict will not be disturbed on appeal. *See Lawson–Avila*, 791 S.W.2d at 594–98; *Alamo Nat'l Bank*, 616 S.W.2d at 910; *Kraus*, 586 S.W.2d at 207. We overrule point of error number four.

In their sixth point of error, appellants contend that the jury's answers to questions number one and number eight are in conflict.

The questions and the jury's answers are the following:

### Question No. 1

Did the Defendants make a material misrepresentation to the Plaintiff about the price for an exchange of his transmission?

Answer: Yes

### Question No. 8

Did the defendants engage in any false, misleading or deceptive acts or practices with regard to the exchange of a transmission in the plaintiff's car?

False, misleading or deceptive acts or practices includes and is limited to:
1) Making false or misleading statements of fact concerning the reason for the price of the service;

2) Representing that the service had approval, characteristics, uses or benefits which it did not have; or

3) Representing that the service was of a particular standard or quality when it was of a lesser standard or quality.

Answer "yes" or "no" to each defendant.

Transmission Exchange, Inc. __No__

Don Schmidt __Yes__

The test for determining whether a conflict in jury answers is fatal is not whether the findings are inconsistent or even irreconcilable, but whether, considering one finding alone, a judgment should be entered for the plaintiff while, considering the other finding alone, a judgment should be entered for the defendant. *Little Rock Furniture Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (1949); *Gulftide Gas Corp. v. Cox*, 699 S.W.2d 239, 243 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). We must construe the charge so as to avoid a conflict, if possible. *Luna v. Southern Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987). We must uphold the verdict if there is any reasonable basis upon which the jury answers can be reconciled. *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980); *Little Rock Furniture*, 222 S.W.2d at 989; *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 473 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

In keeping with Long's fraud theory, question number one asks whether the defendants, collectively, made a material misrepresentation about the *price* of the transmission exchange. The jury's affirmative answer to this question, when considered in relation to the charge as a whole, supports Long's recovery against Transmission Exchange on his fraud theory. In keeping with Long's DTPA theory, question number eight, on the other hand, asks about misrepresentations by each defendant concerning the *exchange of a transmission* in Long's car. The instruction informs the jury that it may consider only misrepresentations as to the *reasons for* the price, and the approval, characteristics, standard, grade, uses and benefits of the services offered. While the jury's answer to question number eight precludes recovery against Transmission Exchange on the DTPA cause of action, it does not negate Long's recovery on the fraud theory. Therefore, the conflict, if any, is not fatal. We overrule point of error number six.

Appellant's seventh point of error complains that the jury's answers to the issues on damages were against the great weight of the evidence and that, properly determined, Long's mitigated damages would have been only $150. We interpret this complaint to be a challenge to the factual sufficiency of the evidence to support the actual damages awarded.

Long presented evidence of damages he sustained due to the damage to the paint on his car, the costs associated with bringing the suit to regain possession of the car, and the cost of renting a replacement for the car while it was being detained by appellant. Appellant argued that Long could have minimized his damages by paying $150 and reclaiming his car but, instead, he purposefully increased them. The jury found that Long's actual damages of $2189.00 should be reduced by $1677.00 because of his failure to mitigate. The evidence as detailed both here and above was sufficient to support these findings. Appellant's seventh point of error is overruled.

In conjunction with appellant's seventh point of error we also consider Long's single cross-point of error. Long contends that the trial court erred in reducing the actual damages awarded by the jury because, as a matter of law, there is no duty to mitigate damages when recovery is based on fraud. We find, however, that this issue was not preserved for our review.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make. TEX.R.APP.P. 52(a).

Long states that the absence of an objection to the admission of evidence on his failure to mitigate or to the special issues

inquiring about such failure is not waiver. He reasons that, because submission of the issue was proper under his DTPA cause of action, those objections would have been improper.

■ However, after verdict and prior to entry of the judgment, Long had other opportunities to object to the application of the mitigation findings to the fraud judgment. Instead, Long moved for entry of judgment "in the form expressed in the attached proposed final judgment." The final judgment awards damages against Transmission Exchange on the fraud theory that reflect a reduction for Long's failure to mitigate. Consequently, the error, if any, was waived. *Litton Indus. Prod. Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex.1984). To preserve a complaint about the judgment entered, the party moving for entry of judgment should move for entry only as to form while noting its disagreement with the content and result of the judgment or some portion thereof. *First National Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex.1989).

The judgment of the trial court against Transmission Exchange, Inc. is affirmed.

## OPINION ON MOTION FOR REHEARING

We grant point one of Transmission Exchange's motion for rehearing and correct our judgment of October 31, 1991, of record in Volume 26, page 1667, to reflect that the judgment of the court below against Transmission Exchange, Inc. is affirmed. The judgment of the court below against Don Schmidt is vacated and a take nothing judgment is rendered in favor of Don Schmidt.

In all other respects, Transmission Exchange's motion for rehearing is overruled.