**ELLIS COUNTY STATE BANK, Tracey Fletcher, John A. Hastings, Jr., and Don Harris, Appellants,**

v.

**Glenn KEEVER, Appellee.**

No. 05–91–02114–CV.

Court of Appeals of Texas, Dallas.

May 24, 1995.

Brent R. Cooper, R. Michael Northrup, Stephen J. Gibson, Ben Taylor, Dallas, for appellants.

Robert E. Wood, Dallas, for appellee.

Before THOMAS [1], C.J., and MORRIS [2] and JAMES [3], JJ.

## OPINION ON REMAND

JAMES, Justice.

This case comes before us on remand to determine the sufficiency of the evidence to support the jury's award of punitive damages in light of the procedural standards set forth in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex.1994). We detail the relevant evidence which, in our opinion, supports each factor.

This case arises from a malicious prosecution action in which the trial court awarded Glenn Keever $110,600 in actual damages and $1 million in punitive damages against Ellis County State Bank.[4] The factual background of this case is contained in *Ellis County State Bank v. Keever*, 870 S.W.2d 63 (Tex.App.—Dallas 1992), *aff'd in part, rev'd in part*, 888 S.W.2d 790 (Tex.1994).

We hold the relevant evidence supports the jury's verdict. We affirm the trial court's award of punitive damages in the amount of $1 million against Ellis County State Bank.

### APPLICABLE LAW

Courts of appeals "must carefully scrutinize punitive awards to ensure they are supported by the evidence." *Texas Beef Cattle Co. v. Green*, 883 S.W.2d 415, 432 (Tex. App.—Beaumont 1994, writ granted) (quoting *Moriel*, 879 S.W.2d at 31). At common

---

1. The Honorable Linda Thomas was a member of the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

2. The Honorable Joseph Morris succeeded Justice Kevin Wiggins, a member of the original panel. Justice Morris has reviewed the briefs and record in this cause.

3. The Honorable Tom James succeeded Justice Joe Burnett who was a member of the original panel at the time this cause was submitted for decision. Justice James has reviewed the record and the briefs in this case.

4. The jury assessed punitive damages of $25,000 against Tracy Fletcher, $260,000 against John Hastings, and $250,000 against Don Harris. Neither Fletcher nor Hastings complain that the punitive damages awards against them are excessive. The supreme court vacated the award against Harris.

law, an award of exemplary damages rests in the jury's discretion. The award will not be set aside as excessive unless the amount is so large as to indicate it is the result of passion and prejudice, or the jury disregarded the evidence. *Aetna Casualty & Sur. Co. v. Joseph,* 769 S.W.2d 603, 607 (Tex.App.—Dallas 1989, no writ). Exemplary damages must rationally relate to actual damages. However, there is no set rule or ratio between the amount of actual and exemplary damages that is considered reasonable. *Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 53–54 (Tex.App.—Dallas 1989, writ dism'd). We note the Texas Supreme Court has previously upheld awards of exemplary damages in ratios considerably higher than the approximately nine to one ratio present in this case. *See Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990) (sixteen to one ratio); *International Armament Corp. v. King,* 686 S.W.2d 595, 596 (Tex.1985) (twenty-five to one ratio).

■ In determining whether the exemplary damage award is reasonable, this Court shall apply the facts of the case, taking into account (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which the conduct offends the public sense of justice and propriety. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

## APPLICATION OF LAW TO FACTS

■ We apply the relevant evidence before the jury to the five factors in *Kraus.*

### The Nature of the Wrong

Malicious prosecution is the wrong upon which the punitive award is founded, an intentional tort. The evidence before the jury demonstrated the Bank sought to circumvent the protections accorded Keever in the federal bankruptcy code by pursuing criminal prosecution of Keever for hindering a secured creditor, a felony. Tracey Fletcher, the Bank's vice president, testified that after conferring with the Bank's legal counsel they decided going to the Ellis County grand jury "would be the best chance to collect our

money or our collateral." She admitted that collecting the loan or the collateral was the purpose for taking the case to the grand jury. John A. Hastings, Jr., the Bank's chairman and legal counsel, testified he gave the grand jury false and misleading testimony regarding the communications between the bank and Keever. The Bank admitted its representatives lied to the grand jury regarding efforts they had made to obtain the collateral from Keever, and they misrepresented Keever's response to their demands for delivery of the collateral. When the district court quashed the first indictment, the Bank sought and obtained a second indictment.

■ It is well established in this state that citizens who report criminal activity to prosecuting authorities are protected by an initial presumption that they acted reasonably and in good faith and, therefore, had probable cause for doing so. *See Akin v. Dahl,* 661 S.W.2d 917, 920 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 693–694 (1894). The law further protects the informer who makes a full and fair disclosure to the authorities. *Browning–Ferris Indus. Inc. v. Zavaleta,* 827 S.W.2d 336, 345 (Tex.App.—Corpus Christi 1991, writ denied). The jury had extensive evidence before it that the Bank neither acted in good faith nor made full and fair disclosure of the facts to the grand jury. The "nature of the wrong" found by the jury was the Bank's purposeful use of felony criminal prosecution against Keever to collect a debt barred by his bankruptcy. We conclude there is sufficient evidence to support the first *Kraus* factor. *Moriel,* 879 S.W.2d at 31.

### The Character of the Conduct Involved

The Bank's chief operating officer and attorney both admitted they submitted evidence to the grand jury containing material misrepresentations and outright fabrications. These officers admitted they presented the grand jury with letters they knew had not been delivered to Keever and which falsely described events and conversations with him. By this false testimony, the Bank led the

grand jury to conclude Keever had concealed the collateral, despite its diligent efforts to collect it. There was evidence that the Bank failed to disclose to the grand jury that Keever was in bankruptcy, collection of the note was barred, and the collateral initially was under the control of the bankruptcy court pursuant to the automatic stay. There was evidence the Bank did not tell the grand jury that representatives of the Bank failed to keep at least two appointments with Keever to pick up the collateral.

After the Ellis County court dismissed the first indictment, the Bank obtained a second indictment based upon the same fictitious testimony as before. The Bank admitted it knew Keever was in bankruptcy when it sought both indictments. At best, the Bank disputed it had proper notice of the bankruptcy. The Bank, through its legal counsel, admitted that it was aware that the collateral was under control of the bankruptcy court at the time the Bank initially demanded its delivery. Through its officers the Bank acknowledged that it utilized writs of sequestration to collect collateral on other similar loans at the same time it prosecuted Keever before the grand jury. There was ample evidence upon which the jury found the Bank had acted with malice.

Both Hastings and Fletcher testified they told the grand jury about Keever's bankruptcy. The Ellis County district attorney contradicted both. The district attorney testified she did not learn of Keever's bankruptcy until after the indictment was returned by the grand jury. Under this record the jury had credible evidence that neither Fletcher nor Hastings told the grand jury about appellee's bankruptcy. Keever testified he was ready and willing to release the equipment to the Bank's officials. Keever stated he had made arrangements directly with Fletcher and through his attorney to surrender the collateral to the Bank. Keever explained the Bank failed to keep any of the scheduled appointments. In contrast, Fletcher testified she had unsuccessfully sought to collect the collateral from Keever. She stated that on one occasion she went to his residence, accompanied by another bank employee, to pick up the collateral. She stated Keever was not there to meet her. When called to testify, the bank employee stoutly disputed Fletcher's testimony and he denied he had accompanied Fletcher on any occasion or had been directed by the Bank to make any independent efforts to collect the collateral. Fletcher testified she made another trip to pick up the collateral, this time accompanied by her former husband. When questioned, her former husband denied having any knowledge of the event.

This record reflects the jury could determine Fletcher and Hastings misled the grand jury concerning the Bank's attempts to retrieve the collateral and failed to fully and fairly apprise the Ellis County district attorney and the grand jury of Keever's cooperation with the Bank and of his bankruptcy. The "character of the conduct" of the Bank was giving false testimony and failing to fully and fairly state the facts before the grand jury and at trial. We conclude there is an abundance of specific evidence to support the second *Kraus* factor. *Moriel*, 879 S.W.2d at 31.

*The Degree of Culpability of the Wrongdoer*

The third *Kraus* factor relates to the "degree of culpability of the wrongdoer." Evidence that supports the second *Kraus* factor is applicable here, as well. The trial court submitted Question No. 3 in the jury charge as follows: "Do you find from a preponderance of the evidence that the commencement of criminal prosecution against Glenn Keever was done with malice?" A proper instruction on the meaning of "malice" followed, informing the jury that "malice" means conduct specifically intended by the Bank to cause substantial injury to Keever.

The jury had before it the testimony of Fletcher, who testified on cross examination that:

Q: It was more attractive to go to the Grand Jury because you thought you had a better chance of getting your collateral.

A: That was the option we chose and we thought that it would be best at that time, yes.

Q: Why did you think it would be best?

A: Well, the attorney and I conferred on it and we thought that would be the best chance we had at the time to collect our money or our collateral.

On cross examination, Fletcher further testified:

Q: So the Grand Jury was the last effort that you made to get the collateral?

A: As far as I know, yes. That was the purpose for taking our case to the Grand Jury.

Q: So you testified three times under oath for the purpose of taking the case to the Grand Jury was to get your collateral?

A: Yes

The jury heard uncontroverted testimony that Hastings, the Bank's chairman and legal counsel, submitted letters containing false statements concerning the conduct of Keever and the Bank. For example, Hastings advised the district attorney Keever had a very violent response to a collection letter Hastings had sent him. At trial, Hastings admitted Keever had no such response. Hastings admitted Keever never received the collection letter. Hastings fabricated this testimony for the grand jury. Hastings also conceded at trial the letters he sent to Keever, copies of which Hastings presented to the grand jury, contained numerous misrepresentations regarding the extent of the Bank's efforts to collect the collateral.

 The record contains undisputed evidence the Bank intentionally withheld material information and presented false testimony to the grand jury. Failure to make a full and fair disclosure of all information alone can be evidence of a hostile motive. *Diamond Shamrock Corp. v. Ortiz*, 753 S.W.2d 238, 242 (Tex.App.—Corpus Christi 1988, writ denied).

In addition to the evidence supporting the jury's finding the Bank failed to fully and fairly state the facts to the grand jury, there is evidence the Bank acted with intent to cause substantial injury to Keever. After the Bank obtained the second indictment, Fletcher asked Keever, "Are you going to pay me, or am I going to see you in jail?"

The evidence established a high degree of culpability of the Bank and supported the jury's award of exemplary damages. We conclude the evidence is sufficient to satisfy the third *Kraus* factor. *Moriel*, 879 S.W.2d at 31.

### Kraus Factors 4 and 5

The fourth and fifth *Kraus* factors are more general in nature. They relate to "the situation and sensibilities of the parties concerned" and "the extent to which the conduct offends the sense of justice and propriety." *Kraus*, 616 S.W.2d at 910. The jury had considerable evidence that the Bank abused the grand jury process through gross deception. We have summarized the relevant evidence of the Bank's course of conduct in our analysis of the first three *Kraus* factors. The same evidence is applicable here.

### The Situation and Sensibilities of the Parties Concerned

In analyzing the relevant evidence regarding the situation and sensibilities of the parties concerned, the jury heard testimony that Keever became aware of his indictment by a story published in the local newspaper. The president of Keever's new bank called the publication to Keever's attention during a business conference. Upon inquiry to the Ellis County sheriff's department, Keever was arrested, manacled, and led across the courthouse lawn to be fingerprinted, photographed, and booked. Until bond could be posted, Keever remained in jail.

Keever testified that as a result of this adverse publicity, he suffered additional economic obstacles to his efforts to rebuild his income following bankruptcy. His former employer testified that, after the indictment, Keever underwent substantial changes in his personality, attitude, and work habits at the business. He testified Keever became severely depressed after the indictment. He stated Keever had been a diligent worker before, but after the indictment, neglected his work. A medical expert witness testified that in his opinion, Keever suffered depression and post-traumatic stress disorder caused by his criminal indictments procured by the Bank.

There was evidence that the Bank gave false testimony at the trial. The jury heard testimony from Fletcher that she had attempted to collect the collateral on two separate occasions, and Keever failed to appear to allow her to accomplish the task. Fletcher testified that on each occasion, she was accompanied by a male to assist her. The jury heard testimony from the two individuals whom she stated were witnesses to these attempts to collect the collateral. Neither witness supported her testimony, each testifying the trips never took place. Throughout the trial, the Bank and its witnesses expressed no remorse for having pursued criminal prosecution of Keever in its collection efforts, rather than seeking a writ of sequestration, the civil process the Bank utilized for collections in similar situations during the same time period. The Bank and its witnesses insisted their attempts to collect the note from Keever by criminal prosecution were justified. Remorse at trial is a factor to be considered in assessing the situation and sensibilities of the parties. *General Chem. Corp. v. De La Lastra*, 815 S.W.2d 750, 758 (Tex.App.—Corpus Christi 1991), *aff'd in part, rev'd in part on other grounds*, 852 S.W.2d 916 (Tex.), *cert. dism'd*, —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). We conclude the evidence was sufficient to satisfy the fourth *Kraus* factor. *Moriel*, 879 S.W.2d at 31.

*The Extent to Which the Conduct Would Offend the Public Sense of Justice and Propriety*

We further conclude the evidence summarized under the first four *Kraus* factors established a course of conduct by the Bank which would offend the public sense of justice and propriety. Evidence adduced at trial indicated Fletcher and Hastings made misrepresentations to Keever, the district attorney, and the grand jury. They did so with an acknowledged purpose of compelling Keever to pay a debt barred by bankruptcy as part of a plea bargain. The jury heard testimony that the district attorney demanded Keever pay the Bank's note as part of a plea bargain to reduce the Bank's charges to a misdemeanor. The jury had evidence that the Bank's purpose in pursuing the indict-ment was neither to collect the collateral nor to seek appellee's punishment for felony violations of the law. The Bank presented conflicting evidence that it had ever attempted to obtain the collateral from Keever after he offered it.

The presumptions of good faith and probable cause, which protect citizens who report criminal conduct to authorities, are protections grounded in sound public policy. The protection afforded to complainants, however, carries with it a concomitant obligation to use criminal prosecution for its very limited role in a free society. The Bank admitted it had other legal means to obtain control of the collateral. It admitted that it was using writs of sequestration for this purpose to collect collateral on other loans in default. To invoke the power of the grand jury for the purpose of forcing appellee to pay a discharged obligation or face incarceration offends the public sense of justice and propriety. We conclude the evidence satisfies the fifth *Kraus* factor. *Moriel*, 879 S.W.2d at 31.

### THE BANK'S NET WORTH AS A FACTOR

The Bank argues the award of $1 million in punitive damages is excessive given that its net worth was $770,000. Net worth is relevant to the issue of punitive damages. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988). Punitive damages are allowed to deter the same or similar future conduct. *Cole v. Tucker*, 6 Tex. 266, 268 (1851). A defendant's "ability to pay" bears directly on the question of adequate punishment and deterrence. As the supreme court stated:

> For example, one hundred dollars as a punitive award against a single mother of three small children may be a greater deterrent than one hundred thousand dollars awarded against a major corporation whose directors are shielded from the stark reality of harm done by the panelled walls and plush carpet of the corporate boardroom.

*Lunsford*, 746 S.W.2d at 472–473.

Evidence adduced at trial indicated the Bank had total assets of $7,933,000, including cash on hand and due from banks of $384,-

000; federal funds sold of $1,050,000; certificates of deposit of $896,000; and U.S. Treasury securities of $400,000. Further, these amounts would not reflect the market value of these assets. Where market value was above the initial cost of the investment, the Bank's financial statements do not reflect the gain until the investment was actually sold. Based upon the above figures, we find the punitive damage award of $1 million against the Bank is not legally excessive. *Greenhalgh,* 787 S.W.2d at 939.

The award of punitive damages "is a rule as old as it is firmly established." *Tucker,* 6 Tex. at 268. Exemplary awards do not depend upon rules of fair compensation, but rather upon rules of just punishment. The amount of the award rests largely within the discretion of the jury. *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705, 708 (Tex. 1970); *Transmission Exch. Inc. v. Long,* 821 S.W.2d 265, 272 (Tex.App.—Houston [1st Dist.] 1991, writ denied). This Court will not set aside the jury's verdict if probative evidence supports it. *Transmission Exch.,* 821 S.W.2d at 272.

Taking into account all of the evidence in support of the jury's verdict, and applying that evidence to those factors required in *Kraus,* we hold the jury's award of punitive damages is not legally excessive. *Transmission Exch.,* 821 S.W.2d at 273.

We affirm the trial court's award of punitive damages against the Bank.