Opinion issued November 9, 2006




 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00749-CV
  __________

WEBWORLD MARKETING GROUP, L.L.C., Appellant

V.

TOMMIE THOMAS, Appellee




On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2001-38341
 

 
 
OPINION ON REHEARING
           The Court, after duly considering Tommie Thomas’s motion for rehearing, has
withdrawn its opinion and judgment of May 25, 2006 and issued the following in its
stead. Thomas’s motion for rehearing is hereby granted.
          In this declaratory judgment action, a jury found that Tommie Thomas (“the
Sheriff”) did not act in good faith when he arbitrarily denied Webworld Marketing
Group, L.L.C.’s application for a Sexually Oriented Business (“SOB”) permit. The
trial court granted the Sheriff’s motion for judgment notwithstanding the verdict
(“JNOV”) and denied all relief Webworld sought against the Sheriff. In its sole point
of error, Webworld contends that the trial court erred in granting the JNOV. We
reverse and render. 
Background
          In March of 2000, Steve Fisher, managing director of Woodbridge Investment
Company, purchased some property on which he wanted to establish a gentleman’s
club. Fisher, who had experience with SOBs, was aware of the importance of finding
land that was not within 1500 feet of any residential use because of the requirements
to get a permit for an SOB. An SOB must apply for a permit under Chapter 243 of
the Texas Local Government Code and Harris County Ordinance 83.1812.
          In December of 2000, Webworld was formed to lease the land from Fisher and
run the SOB. Within 1500 feet from the proposed SOB, there was a parrot shop
owned by Joe Melvin and his wife. The Melvins had purchased this land in 1996 and
applied for a permit to build first the shop on the ground level and then a garage
apartment upstairs where they would live. They planned to do the construction
slowly as funds became available to avoid going into debt. The Melvins stayed
upstairs periodically, beginning in 1998 after the framing was completed, while they
continued working on the building. The Melvins testified they stayed there, on
average, two or three nights a month during this time. The Melvins also applied for
a homestead exemption; however, because they already owned another home and
could only have one homestead, the exemption was denied. Due to lack of funding,
little progress was made on the building construction in 1999. However, the Melvins
still lived at the shop occasionally throughout 1999. In March 2000, after he decided
to purchase the land for the SOB, Fisher noticed the parrot shop and drove by it
almost daily. It was his impression that no one was living there. 
          In March 2001, Fisher climbed a ladder in the middle of the day to investigate
the Melvins’ upstairs property and took some pictures through the window. He could
see all the way to the back wall and noticed that it was largely unfinished and
appeared to be storage for the shop downstairs. He acknowledged that there was
some sort of construction underway. 
          After his investigation, Fisher called Darla Gideon of Webworld and advised
her that there was nothing in the parrot shop and that she should apply for the SOB
permit. Gideon testified that she drove by the parrot shop “many” times between
January 2001 and March 2001 and saw “no vehicles parked out front. No activity. 
The upstairs had no blinds or drapes on it.” There was a sign on the door, which
clearly stated that the store would be closed during that time for approximately three
months, as it was every year while the Melvins were on vacation. 
          On March 19, 2001, Webworld filed for the SOB permit and certified that there
was no residence within 1500 feet of the SOB site. In accordance with the
requirements for an SOB permit, Webworld sent letters to all property owners within
the 1500 foot radius, advising them of its intention to establish the SOB. The
property owners then had the opportunity to write a letter to the Sheriff with any
objections to the SOB’s permit being issued. After receipt of this notice, the Melvins
wrote a letter to the Sheriff explaining that their “residence” was above the parrot
shop and within the 1500 foot radius. 
          On May 15, 2001, Webworld received a letter from Major Juan Jorge of the
Sheriff’s office denying its SOB permit on the ground that it violated section
VIII(e)(4) of the Ordinance because (1) the SOB was within 1500 feet of a dwelling,
(2) Webworld had knowingly made a misleading statement by providing an incorrect
address of the SOB, and (3) Webworld had knowingly made a misleading statement
because “the proposed building which was to be a cabaret will not fit in the area of
your lot area. . . .” Gideon testified that, after receiving Major Jorge’s letter, she
made several telephone calls to Reliant Houston Lighting & Power (“HL&P”), and
she was told that, for the property in question, HL&P had assigned “5, 6, 7 addresses.
Some half addresses to light poles and things like that.” Gideon was able to obtain
the new address for the planned building on the Woodbridge property. Gideon
explained that, when the application was filed, the land was “raw. Trees, mud, dirt,
animals.” There was no building in place.
          On June 19, 2001, Webworld’s attorney wrote a letter acknowledging that it
had discovered that the address for the SOB was wrong on the application, and he
advised the Sheriff of the correct address. Attached to the letter from Webworld’s
lawyer were at least two documents. One was a map that Webworld had created of
the property in question with the correct addresses in place. “Becky” from HL&P
signed the map and stated that she agreed that the addresses were correct. The second
was a letter from an engineering firm stating that it had designed the building and the
building would fit on the pad site.


 
          Gideon never heard back from the Sheriff. At all times relevant to Webworld’s
application for an SOB permit, the Sheriff had actual knowledge of the build site’s
location, and, at all times and with both addresses, the parrot shop was considered to
be within 1500 feet of the building.



          Webworld sought (1) the trial court’s declaration that Webworld met all
required criteria for the issuance of an SOB permit and, correspondingly, (2) the trial
court’s order requiring the Sheriff to issue the SOB permit to Webworld. 
          The case went to trial, and the jury was asked four questions in the charge. 
They were as follows:
Question Number 1
Was the location of Webworld’s proposed enterprise located a minimum
of one thousand five hundred (1,500) feet from any dwelling in
existence at that location at least thirty (30) days prior to Webworld’s
application dated March 19, 2001?
 
A “dwelling” is a house, duplex, apartment, townhome, condominium,
mobile home or any other building used as a “residence”.
 
The term “residence” means, personal presence at some place of abode
with no present intention of definite and early removal and with purpose
to remain for undetermined period, not infrequently, but not necessarily
combined with design to stay permanently. 

          A person may have more than one residence.

          Answer “Yes” or “No”:

          Answer: [Yes]

Question Number 2
 
Did Webworld knowingly make a misleading statement of material fact
by omitting or falsifying information in its application dated March 19,
2001 for a Sexually Oriented Business Permit?

          Answer “Yes” or “No”:

          Answer: [No]

Question Number 3
 
Did the Sheriff arbitrarily deny Webworld’s March 19, 2001 application
for an SOB permit?
 
You are instructed that the Sheriff is required to state its reasons for the
denial of the SOB permit in writing. You are further instructed that in
this lawsuit, the Sheriff is not prohibited from presenting evidence of
additional or alternative facts that support denial of the SOB permit.

          Answer “Yes” or “No”:

          Answer: [Yes]

Question Number 4 
 
Did the Sheriff act in good faith in denying Webworld’s March 19, 2001
application for an SOB permit?
 
You are instructed that the Sheriff is required to state its reasons for the
denial of the SOB permit in writing. You are further instructed that in
this lawsuit, the Sheriff is not prohibited from presenting evidence of
additional or alternative facts that support denial of the SOB permit.

          Answer “Yes” or “No”:

          Answer: [No]

After the jury answered all four questions in favor of Webworld, the Sheriff filed a
motion for JNOV in which he alleged that there was legally insufficient evidence to
support the jury’s finding on question number 1 because there was “no evidence that
the planned use of the property was not as a part-time residence.” (Emphasis added.) 
He asserted that the photographs of the parrot shop “showed a completed structure
that was capable of being used as a residence.” (Emphasis added.) The Sheriff also
complained that there was legally insufficient evidence to support the jury’s finding
on questions number 3 and number 4 because there was no evidence that the Sheriff
arbitrarily denied the SOB permit or acted in bad faith “in light of the fact that the
Melvins had indicated in 1996 that they would use the property as a residence.” The
Sheriff further asserted that “these questions were not issues of fact which would be
appropriate for the jury to decide.” The motion for JNOV did not address the jury’s
finding in jury question number 2 that Webworld did not knowingly make a
misleading statement of material fact by omitting or falsifying information in its
application dated March 19, 2001 for an SOB permit.
          Without stating its reasons, the trial court granted the motion for JNOV and
denied Webworld’s writ of mandamus against the Sheriff. Webworld appeals this
order. In its sole point of error, Webworld contends that the trial court erred in
granting the Sheriff’s JNOV.
Intent
          Webworld argues that the Melvins’ intent to create a dwelling is not an element
of the Ordinance and is thus irrelevant to the inquiry of whether the parrot shop was
a dwelling, whose use, as a residence, was in existence at least 30 days before the date
of the SOB application.
          We need not determine whether the intent to create is relevant because the jury
was not asked to determine the significance of the Melvins’ intent.


 
JNOV
          Webworld argues that the trial court erred in granting the JNOV because there
was more than a scintilla of evidence to support the jury’s verdict.
Standard of Review 
          A trial court may grant a JNOV if there is no evidence to support one or more
of the jury findings on issues necessary to liability. Tiller v. McLure, 121 S.W.3d
709, 713 (Tex. 2003). To determine whether there is no evidence to support a jury
verdict, we view the evidence in a light that supports the challenged finding and
disregard all evidence and inferences to the contrary. Id. Where an issue of fact is
raised, a court may not grant JNOV where facts are controverted, or such that
different inferences may reasonably be drawn therefrom. See Richardson v. Dallas
Ry. & Terminal Co., 198 S.W.2d 475, 478 (Tex. Civ. App.—Waco 1946, no writ). 
It is the jury’s province to reconcile conflicting or contradictory evidence of the
witnesses. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). The jury is the sole
judge of the credibility of the witnesses and the weight to be given their testimony. 
Transmission Exch. Inc. v. Long, 821 S.W.2d 265, 271 (Tex. App.—Houston [1st
Dist.] 1991, writ denied). We may not substitute our opinion for that of the trier of
fact. Id.
          If more than a scintilla of evidence supports the finding, the jury’s verdict must
be upheld. Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). More
than a scintilla of evidence exists when the evidence enables reasonable minds to
differ in their conclusions. See Tarrant Reg’l Water Dist. v. Gragg, 151 S.W.3d 546,
552 (Tex. 2004). Conversely, evidence that creates only a mere surmise or suspicion
is no more than a scintilla and is, thus, no evidence. Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004). Similarly, an inference that is stacked only upon other
inferences, rather than direct evidence, is not legally sufficient evidence. See
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 728 (Tex. 2003).
More than a Scintilla
          Let us now review the questions submitted to the jury.
Question Number 1
Was the location of Webworld’s proposed enterprise located a minimum
of one thousand five hundred (1,500) feet from any dwelling in
existence at that location at least thirty (30) days prior to Webworld’s
application dated March 19, 2001?
 
A “dwelling” is a house, duplex, apartment, townhome, condominium,
mobile home or any other building used as a “residence”.
 
The term “residence” means, personal presence at some place of abode
with no present intention of definite and early removal and with purpose
to remain for undetermined period, not infrequently, but not necessarily
combined with design to stay permanently. 

          A person may have more than one residence.

Gideon testified that Ron Daugherty, her registered agent, went door-to-door to look
for residences within 1500 feet of the pad site. Attached to the application were
photographs and descriptions of the buildings located within 1500 feet of the
proposed SOB. Gideon testified that the description of the parrot shop was as
follows:
This 2-story building houses an office and related office equipment as
well as an indoor retail facility for housing parrots and other exotic
birds, feed, [and] related equipment. The building is currently empty as
the owners and operators close for an approximate three-month period
yearly from December to March. We have examined the premises. No
one lives there or otherwise occupies the premises except for a few bird
cages and related business items. There is no sign of any furniture, beds
or any other indicia of anyone using this as a residence. 

Gideon also testified that, between January 1 and March 19, 2001, she drove by the
parrot shop “many” times and saw “no vehicles parked out front. No activity.” The
upstairs, which Gideon described as having “lots of windows,” had “no blinds or
drapes on it.” None of the other store owners told her anything different about the
parrot shop. 
          On cross-examination, the Sheriff’s attorney asked Gideon if she had any
evidence that the Melvins were not planning to build a residence on the top floor of
the parrot shop as their 1996 permit reflected their intent to be. Gideon responded,
“Well, there was no – there was no toilet, there was no running water, there was no
electricity upstairs.” 
          Just considering the testimony from the first witness at trial, we hold that more
than a scintilla of evidence exists to support the jury’s answer to question number 1.
Question Number 2
Did Webworld knowingly make a misleading statement of material fact
by omitting or falsifying information in its application dated March 19,
2001 for a Sexually Oriented Business Permit?
 
          In his motion for JNOV, the Sheriff did not contest the jury’s finding on
question number 2. Regardless, Gideon testified that she signed the affidavit on the
original application and that she did not lie or knowingly make any misrepresentation
of any material fact. Accordingly, we hold that there was more than a scintilla of
evidence to support the jury’s finding on question number 2.
          On appeal, the Sheriff argues that, because Webworld originally provided the
Sheriff with an inaccurate address on its application for the SOB permit, the Sheriff
did not default in the performance of his legal duty. Importantly, at no time during
trial or in any pleading filed by the Sheriff prior to trial did he raise such an issue for
review. Accordingly, he has waived this argument.
          The Sheriff contends that an opinion from this Court allows a trial court to
grant a motion for JNOV on a ground not expressly asserted in the motion. See
McDade v. Tex. Commerce Bank, 822 S.W.2d 713, 717 (Tex. App.—Houston [1st
Dist.] 1991, writ denied). While McDade allows granting such a motion, the facts are
easily distinguished from those before us. 
          In McDade, a retired bank officer filed suit against the bank for breach of
contract, breach of fiduciary duty, negligence, and violation of the Deceptive Trade
Practices Act after the bank opened a regular money market account instead of an
IRA account as he had requested. Id. at 716. The jury returned a verdict in favor of
McDade, the retired bank officer, and the bank filed a motion for JNOV. Id. The
trial court entered a JNOV and found that, among other things, McDade’s claims
were barred by the statute of limitations—an argument not raised in the bank’s
motion for JNOV. Id. The jury questions, however, did address the date on which
McDade should have discovered the bank’s error. Id.
          Here, the trial court did not state the basis for its decision to grant the Sheriff’s
motion for JNOV. This does not mean that the Sheriff can now assert any possible
basis for the trial court’s holding. That would place Webworld in a completely
defenseless posture. In its response to the Sheriff’s motion for JNOV, Webworld did
not respond to the incorrect address argument because it was not raised in the
Sheriff’s motion for JNOV. Now, on appeal, the Sheriff, as appellee, raises this
argument for the first time. Our facts are distinguishable from McDade’s. Here, the
jury was not asked to comment on the significance of the incorrect address, and the
trial court did not state its reasons for granting the motion for JNOV. 
          Furthermore, although the address written on Webworld’s application for an
SOB permit was incorrect, at all times relevant to this case, the Sheriff knew the
actual location of the build site. Major Jorge testified that having the incorrect
address on the application would not be the basis for denying a permit if (1) the
location was known to the Sheriff’s department, (2) it knew which structures existed
within 1500 feet of the proposed build site, and (3) the address was corrected in time. 
All distance measurements related to Webworld’s SOB permit application were taken
from the build site’s correct location. There is no evidence that the incorrect address
on Webworld’s SOB permit application misled the Sheriff. To the contrary, the
evidence at trial revealed that, as soon as it discovered that the address was incorrect,
Webworld notified the Sheriff of the correct address for this “raw” land where the
proposed SOB site was planned.
Immaterial Jury Questions
          On appeal, the Sheriff contends that all questions submitted to the jury were
immaterial and thus ripe for a JNOV because Webworld’s June 19, 2001 letter to the
Sheriff that indicated the corrected address for the SOB was, in fact, a separate and
distinct SOB permit application. Again, the Sheriff did not present this argument to
the trial court and he did not offer any proposed jury questions which treated the June
2001 letter as a separate application; therefore, the Sheriff’s argument regarding the
materiality of the four jury questions was waived.
          We sustain Webworld’s sole point of error.
Cross-Points
          The Sheriff raises the following cross-points on appeal: (1) the trial court erred
in submitting jury questions 1, 3, and 4 because there was no evidence to support
their submission; (2) the trial court erred in failing to grant the Sheriff’s request for
an instructed verdict because there was no evidence in support of Webworld’s claims
for relief; (3) alternatively, if there was any evidence of probative value in support of
Webworld’s claim, the evidence was factually insufficient to support the jury’s
answers to questions 1, 3, and 4; and (4) alternatively, if there was any evidence in
support of Webworld’s claim, the case should be remanded because the charge was
erroneous. 
          When JNOV is granted, the appellee may bring forward by cross-point any
ground, including factual sufficiency, which would have vitiated the verdict or
prevented an affirmance of the judgment. Tex. R. Civ. P. 324(c); Tex. R. App. P.
38.2(b); Winograd v. Clear Lake City Water Auth., 811 S.W.2d 147, 159 (Tex.
App.—Houston [1st Dist.] 1991, writ denied). The purpose of these rules is to
require a final disposition of the case by the appellate court, where a JNOV is
erroneously rendered by the trial court, on the basis of the record before it, and to
order a remand only as to questions that require the taking of additional evidence. 
Jackson v. Ewton, 411 S.W.2d 715, 718 (Tex. 1967). 
No Evidence
          In cross-points one and two, the Sheriff contends that there was no evidence
to support the submission of jury questions 1, 3, and 4 and that the trial court erred
in failing to grant the Sheriff’s request for an instructed verdict. Having already
determined that more than a scintilla of evidence existed to support the jury’s
findings, we overrule cross-points one and two.
Factually Insufficient Evidence
          In cross-point three, the Sheriff asserts that the evidence was factually
insufficient to support the jury’s answers to questions 1, 3, and 4. A point in a motion
for new trial is a prerequisite to a complaint on appeal that the evidence is factually
insufficient to support a jury finding and that a jury finding is against the
overwhelming weight of the evidence. Tex. R. Civ. P. 324(b)(2), (3); Cecil v. Smith,
804 S.W.2d 509, 510–11 (Tex. 1991). The record does not reflect that the Sheriff
filed a motion for new trial and raised a factual sufficiency point, and, thus, the
Sheriff has failed to preserve any factual sufficiency issues for our review. Cecil, 804
S.W.2d at 511–12. We overrule cross-point three.
Charge Error
          In cross-point four, the Sheriff contends that the case should be remanded
because the charge was erroneous. Specifically, the Sheriff complains of the trial
court’s overruling his objection to the charge that “defined a dwelling without
explaining that a dwelling also includes an intended or planned use of the property,
and incorrectly applied the law.” We review the trial court’s decision to overrule the
Sheriff’s objection for abuse of discretion. State Farm Lloyds v. Nicolau, 951 S.W.2d
444, 451 (Tex. 1997). 
          The submitted definition of “dwelling” stated as follows: “a ‘dwelling’ is a
house, duplex, apartment, townhome, condominium, mobile home or any other
building used as a ‘residence.’” The charge further defined “residence” as “personal
presence at some place of abode with no present intention of definite and early
removal and with purpose to remain for undetermined period, not infrequently, but
not necessarily combined with design to stay permanently.” The definition of
dwelling was taken directly from section IV(o) of the Ordinance. 
          The Sheriff also complains that “the question given to the jury on the
controlling issue concerning the Melvin’s [sic] residence did not instruct the jury to
consider the Melvin’s [sic] intended use of their proper [sic] in determining whether
it was a residence despite Thomas’ objection.” We disagree. In fact, the definition
of residence includes a statement regarding “personal presence at some place of
abode with no present intention of definite and early removal.” (Emphasis added.)
          Accordingly, we hold that the Sheriff has not shown that the trial court abused
its discretion in overruling his objection to the charge. We overrule cross-point four. 
 
 
 
 
Conclusion
          We reverse the trial court’s judgment, and render judgment in accordance with
the jury’s verdict. 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.